# EXHIBIT 2

Filing # 234452115 E-Filed 10/24/2025 11:45:20 PM

IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

CARLOS HUMBERTO PEREZ PAGOAGA,

    *Plaintiff*,

vs.

MSC CRUISES, S.A. and FANTASIA CRUISE LTD.,

    *Defendants*.

CASE NO. _____

_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, CARLOS HUMBERTO PEREZ PAGOAGA, by and through undersigned counsel, hereby files his Complaint against Defendants MSC CRUISES, S.A. and FANTASIA CRUISE LINE, LTD., and as grounds therefor states as follows:

## GENERAL ALLEGATIONS

1.    This is a Complaint for damages in excess of the jurisdictional limits of the Circuit Court in and for Broward County, Florida.

2.    At all times material, the Plaintiff, CARLOS HUMBERTO PEREZ PAGOAGA ("MR. PEREZ PAGOAGA"), was a seaman, crewmember, and/or business invitee onboard the cruise ship M/V *MSC FANTASIA*.

3.    Defendant, MSC CRUISES, S.A., is a foreign corporation organized under the laws of Switzerland but is registered to do business in the state of Florida and it maintains a registered agent for service of process in Broward County, Florida: CT Corporation System, located at 1200 South Pine Island Road, Plantation, FL 33324.

4.    Defendant, MSC CRUISES, S.A., was at all material times Plaintiff's maritime employer and/or borrowing employer, and therefore owes Plaintiff all duties and benefits arising

**▪ BILLERA LAW ▪**

2201 NW Corporate Blvd., Ste. 200, Boca Raton, FL 33431 ▪ TEL #(561) 500-7777 ▪ FAX #(561) 500-7778

Page **1** of **38**

as his maritime employer, including the duties to provide a seaworthy vessel, to provide prompt, proper and adequate medical care, and to provide maintenance and cure until Plaintiff was at maximum medical cure.

5.      As Plaintiff's employer and/or borrowing employer, MSC CRUISES provided, was required to provide, and/or undertook to provide Plaintiff's medical treatment, including maintenance and cure.

6.      At all times material, MSC CRUISES personally or through an agent:

   a.   Operated, conducted, engaged in, or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

   b.   Was engaged in substantial activity within this state;

   c.   Operated vessels in the waters of this state; and

   d.   The acts of Defendant set out in this Complaint occurred in whole or in part of this county and/or state.

7.      Personal jurisdiction also lies over MSC CRUISES because it has committed one or more of the acts stated in F.S. §§ 48.193, 48.081 and/or 48.181.

8.      At all times material, MSC CRUISES was the operator and/or bare boat charterer and/or owner *pro hac vice* of the cruise ship, M/V *MSC FANTASIA*.

9.      At all times material, and in the alternative, FANTASIA CRUISE LTD., was the owner and operator and/or bare boat charterer and/or owner *pro hac vice* of the cruise ship, M/V *MSC FANTASIA*.

10.     Further, MSC CRUISES, S.A., does business in Florida through its agent, MSC Cruises (USA) Inc., located at: 6750 N. Andrews Ave. Suite 100, Ft. Lauderdale, FL 33309. Said agent sells intangible personal property on MSC's behalf to individuals and/or business entities. MSC CRUISES, S.A., is conclusively presumed to be both engaged in substantial and not isolated

▪ **BILLERA LAW** ▪

**2201 NW Corporate Blvd., Ste. 200, Boca Raton, FL 33431 ▪ TEL #(561) 500-7777 ▪ FAX #(561) 500-7778**
Page **2** of **38**

activities within this state and operating, conducting, engaging in, or carrying on a business or business venture in this state.

11. Moreover, MSC CRUISES, S.A., has a designated forum selection clause that requires passenger injury claims to be litigated in the United States District Court for the Southern District of Florida.

12. In fact, MSC CRUISES, S.A. has a registered agent for service of process in the State of Florida, located in Plantation, Broward County, Florida. Defendant has thereby consented to jurisdiction in this state and venue in Broward County, Florida.

13. Defendant, MSC CRUISES was the owner pro hac vice and/or operator of the M/V *MSC FANTASIA* at the time of Plaintiff's employment on said vessel. As the vessel owner, MSC CRUISES had the nondelegable duty to provide any crewmembers on board a seaworthy vessel. MSC CRUISES also had the duty to provide maintenance and cure to any crewmembers, including Plaintiff, injured while in the service of its vessel.

14. Defendant, FANTASIA CRUISE LTD., is a foreign corporation organized under the laws of Switzerland with its registered office address being Avenue Eugene-Pittard, 40, 1206, Geneva, Switzerland.

15. Further, FANTASIA CRUISE LTD., does business in Florida through its agent, MSC Cruises (USA) Inc., located at: 6750 N. Andrews Ave. Suite 100, Ft. Lauderdale, FL 33309. Said agent sells intangible personal property on MSC's behalf to individuals and/or business entities. FANTASIA CRUISE LTD., is conclusively presumed to be both engaged in substantial and not isolated activities within this state and operating, conducting, engaging in, or carrying on a business or business venture in this state.

16. At all times material, the Defendant FANTASIA CRUISE LTD., personally or

through an agent:

    a.  Operated, conducted, engaged in, or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b.  Had a registered agent for service of process in Broward County, Florida;

    c.  Was engaged in substantial activity within this state;

    d.  Operated vessels in the waters of this state; and

    e.  The acts of Defendant set out in this Complaint occurred in whole or in part of this county and/or state.

17.    Personal jurisdiction also lies over FANTASIA CRUISE LTD., because it has committed one or more of the acts stated in F.S. §§ 48.193, 48.081 and/or 48.181.

18.    Once on board the M/V *MSC FANTASIA*, Plaintiff became the borrowed employee of MSC CRUISES under *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir.1969). First, Plaintiff was assigned to work as a Bar Boy under an MSC CRUISES supervisor.

19.    Once Plaintiff was placed in his position on the M/V MSC FANTASIA, he was performing the work of MSC CRUISES as a Bar Boy.

20.    Although MSC MALTA SEAFARERS CO. LTD., was Plaintiff's nominal employer under his Employment Agreement, once Plaintiff joined the M/V MSC FANTASIA, it was agreed and clear that Plaintiff was working for MSC CRUISES under an MSC CRUISES supervisor and assisting MSC CRUISES in performing his duties as a Bar Boy.

21.    When Plaintiff joined the vessel and learned that he was to work for MSC CRUISES, rather than MSC MALTA SEAFARERS CO. LTD., he acquiesced to performing utility duties for MSC CRUISES.

22.    Upon information and belief, all of Plaintiff's equipment, clothing, shoes, supplies, and food was provided by MSC CRUISES, and not by MSC MALTA SEAFARERS CO. LTD.

23.    Although Plaintiff was hired to work as a seaman and crewmember for MSC

▪ **BILLERA LAW** ▪

2201 NW Corporate Blvd., Ste. 200, Boca Raton, FL 33431 ▪ TEL #(561) 500-7777 ▪ FAX #(561) 500-7778

Page **4** of **38**

MALTA SEAFARERS CO. LTD., in fact he never performed any seaman's work directly under MSC MALTA SEAFARERS CO. LTD., and never performed any functions on the vessel as a crewmember, other than his work as a Bar Boy for MSC CRUISES. In fact, one hundred percent of Plaintiff's work on the M/V *MSC FANTASIA* was under the control, supervision, and direction of MSC CRUISES.

24.     Defendant MSC CRUISES, had the right to terminate Plaintiff and was the entity that conducted reviews of Plaintiff's performance.

25.     Plaintiff was paid by MSC CRUISES, not by MSC MALTA SEAFARERS CO. LTD. Under the *Ruiz* factors referenced *supra*, Plaintiff was the borrowed employee of MSC CRUISES.

26.     That Plaintiff was the borrowed servant of MSC CRUISES. is further established by the fact that, once Plaintiff was injured on board the M/V *MSC FANTASIA*, MSC CRUISES, through its agents, directed Plaintiff's medical treatment, made all decisions regarding when and where Plaintiff would sign off, provided for his repatriation, and provided him medical care off the vessel.

27.     As Plaintiff's borrowing employer, Defendant MSC CRUISES, had the nondelegable duty to provide prompt, proper and adequate medical care to the Plaintiff and to provide him maintenance and cure.

28.     Alternatively, Defendant MSC CRUISES, undertook the duty to provide prompt, proper and adequate medical care to the Plaintiff and to provide him maintenance and cure, thereby becoming liable for any and all acts and/or omissions regarding the negligent provision of Plaintiff's medical care, maintenance and curative treatment.

29.     Defendant MSC CRUISES. was neither a signatory nor a named or intended

beneficiary under the employment agreement between Plaintiff and MSC MALTA SEAFARERS CO. LTD. There is no privity of contract between Defendant MSC CRUISES and Plaintiff and there is no contractual bar to his bringing this suit in Florida State Court.

30.     Moreover, as the vessel owner pro hac vice, MSC CRUISES, S.A. had the nondelegable duty to provide maintenance and cure. Bertram v. Freeport McMoran, Inc., 35 F.3d 1008, 1013 (5th Cir. 1994).

31.     MSC CRUISES, S.A., as the vessel owner pro hac vice, also had the nondelegable duty to provide a seaworthy vessel.

32.     The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

33.     In the alternative, Plaintiff pleads that if this Court rules the General Maritime Law of the United States does not apply, the causes of action asserted in this Complaint arise under Panamanian law.

34.     Under the law of Panama, if a seafarer is injured or becomes ill in the course and scope of work two compensation claims are permitted. One is a contractually-based claim and the other is a negligence or fault-based claim. The contract of employment is the basic document for the contractual claim for benefits and compensation. The negligence or fault claim is an additional legal remedy that is available to the seafarer.

35.     The laws of Panama governing compensation for personal injury and wrongful death claims are applicable to all seafarers without distinction as to their citizenship or nationality

36.     Panama has adopted a disability table for different types of injuries, based on a percentage of the disability for the purposes of a contractual claim.

37.     Under Panamanian law, a Plaintiff is entitled to all proven damages arising out of

**▪ BILLERA LAW ▪**

a tort-based claim. Damages can be economic, loss of earnings, actual damages, and future medical expenses. A seafarer can also claim 'moral damages,' a term which includes damages for pain and suffering.

38. Damages under Panamanian law are controlled by Civil Code Article 1644-A: The damage caused includes both material and moral damages.

39. Under said Article, moral damage is understood as the affection that a person suffers in his feelings, affections, beliefs, decorum, honor, reputation, private life, configuration and physical appearance, or in the consideration that others have of him. When an unlawful act or omission produces moral damage, the person responsible for the same will have the obligation to repair it, by means of a monetary indemnity, regardless of whether material damage has been caused, both in matters of contractual and non-contractual liability. In the case of contractual liability and if there is a penalty clause, the provisions of such clause shall apply.

40. Article 1644-A holds that the same obligation to repair the moral damage attaches whether the liability arises from negligence, strict liability, or is caused by the State, the decentralized institutions of the State and the Municipality and their respective officials, according to Article 1645 of the Civil Code.

41. The Article provides that the amount of the compensation will be determined by the judge taking into account the injured rights, the degree of responsibility, the economic situation of the responsible party, and that of the victim, as well as the other circumstances of the case.

42. Civil Code Art. 1645 provides: The obligation imposed by Article 1644 is enforceable not only for one's own acts or omissions but also for those of the persons for whom one is liable.

43. Art. 1644 places the burden on the plaintiff to establish the 4 elements of

negligence, like any regular tort claim.

44.    The main elements for the purpose of calculating contractually-based compensation are: (a) the wages earned, including future increases; (b) the age of the plaintiff; (c) the number of working years until retirement; and (d) a percentage of the medically determined disability.

45.    The contractually based claim arises under Chapter 7, Title I of Law Decree No. 8 of 1998, Articles 80 through 83, CL-001, and/or Executive Decree 86 of 2006. The damages awarded under Decree No. 8 are in addition to any and all damages awarded for general negligence, which are provided for under Article 1644 of the Civil Code of Panama.

46.    Further, the Maritime Labour Convention 2006, which has been incorporate into Panamanian law, provides further obligations on the shipowner to provide a seaworthy vessel as well as prompt, proper and adequate medical care on board and shore side.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

47.    Prior to coming to work for MSC MALTA SEAFARERS CO. LTD., MSC CRUISES, and/or MSC CRUISES, S.A., MR. PEREZ PAGOAGA underwent a complete and thorough pre-employment examination in which he was given X-rays, ultrasounds, a head-to-toe physical examination by a doctor, blood tests, urine tests, and a full medical history was taken. Plaintiff was found fit for duty with no restrictions, no illnesses or injuries, and no limitations.

48.    On October 24, 2024, MR. PEREZ PAGOAGA fell from a top bunk bed landing on his left knee and left hand, and injuring his neck. Plaintiff felt immediate pain to his left arm, left knee, back and neck.

49.    The bunk bed did not have adequate railing or hand holds; did not have adequate lighting, did not have adequate non-slip grip on its ladder steps, and otherwise did not conform to relevant industry standards for the safe design and construction of said bunk beds.

▪ **BILLERA LAW** ▪

50. MR. PEREZ PAGOAGA immediately reported his fall and injuries to the ship's medical center, which examined him, prescribed pain relievers; and declared Plaintiff to be fit for duty with follow up medical care required.

51. On or about November 6, 2024, MR. PEREZ PAGOAGA was in the performance of his duties onboard M/V MSC FANTASIA, On said date, the Plaintiff was required to lift and carry unreasonably heavy boxes of fruit, and during or near the last lift, he felt a sharp pain in his left hand. The vessel was short-handed and Plaintiff was required to do the job of two crewmembers at the time.

52. Plaintiff immediately reported the injury to his supervisor.

53. On November 7, 2024, MR. PEREZ PAGOAGA attended the infirmary with complaints of pain in his left thumb, knee, as well as neck pain which was radiating into his left hand. He was prescribed pain killers and referred to an orthopedist.

54. On November 9, 2024, MR. PEREZ PAGOAGA, was seen by Dr. Nicolae Sarbu and was assessed with left thumb dislocation and was prescribed pain killers.

55. On September 25, 2025, Plaintiff reported to Instituto Hondureno De Seguridad Social to have ultrasound of his left knee. Dr. Marcelino Lopez assessed Plaintiff's injury and those tests revealed left knee suprapatellar bursitis.

56. MSC negligently failed to provide MR. PEREZ PAGOAGA prompt, proper and adequate medical treatment aboard the vessel and/or shoreside; and Plaintiff thereby became injured, and his underlying medical conditions became aggravated.

57. The vessel was not equipped to provide MR. PEREZ PAGOAGA with the follow up evaluation and treatment which he required, but instead informed Plaintiff that despite his ongoing severe pain he would not be seen by shoreside doctor for a period of weeks.

58.     MR. PEREZ PAGOAGA remains in severe constant pain and is unable to perform the daily activities of living in any normal fashion; and his left knee, left thumb, back and neck injury is causing secondary atrophy and compensation injuries to other parts of his body.

59.     MSC and the vessel repatriated MR. PEREZ PAGOAGA with no arrangements for his medical care and have never followed up with him regarding his medical needs. MSC and the vessel have never provided Plaintiff maintenance, i.e., either food & lodging or cash payments to allowing him to arrange his own while he convalesces.

60.     MSC and the vessel failed to provide MR. PEREZ PAGOAGA prompt, proper and adequate medical treatment aboard the vessel and/or shoreside; and Plaintiff thereby became injured, and his underlying medical conditions became aggravated.

61.     MR. PEREZ PAGOAGA remains in severe constant pain and is unable to perform the daily activities of living in any normal fashion.

62.     Defendants and the vessel have never followed up with him regarding his medical needs.

63.     Defendants and the vessel have never provided Plaintiff maintenance, i.e., either food and lodging or cash payments to allow him to survive while he recovers from his hernia surgery, or while he is treating for his conditions referenced above.

64.     Defendants and the vessel failed to provide MR. PEREZ PAGOAGA prompt, proper and adequate medical treatment aboard the vessel and/or shoreside; and Plaintiff thereby became injured, and his underlying medical conditions became aggravated.

65.     MR. PEREZ PAGOAGA has never been found to be at Maximum Medical Improvement ("MMI") for his conditions. As such, Plaintiff is entitled to receive maintenance and medical cure from Defendant in a timely and complete manner.

▪ **BILLERA LAW** ▪

66.     The Third District Court of Appeal has described the doctrine of maintenance and cure as follows:

> Maintenance and cure is an ancient duty under the law of admiralty that arises against a shipowner in favor of a seaman who becomes ill, injured, or incapacitated, or whose condition becomes aggravated or enhanced for any reason, at least until the time that the seaman has achieved maximum medical recovery . . . Admiralty courts have traditionally been liberal in interpreting the scope of this duty . . . The seamen are wards of the Court and maintenance and cure should be afforded as long as there is any ambiguity or uncertainty about the continuation of that status . . . "The nature and foundations of the liability required that it be not narrowly confined or whittled down by restrictive and artificial distinctions defeating its broad and beneficial purposes." *Aguilar v. Standard Oil Co.*, 318 US 724, 735, 63 S.Ct. 930, 87 LED. 1107 (1943).

*Duarte v. Holland America Line, NV*, 761 So.2d 367, 368 (Fla. 3d DCA 2000).

67.     The United States Supreme Court held that "the breadth and inclusiveness" of a shipowner's duty to pay maintenance and cure "assure its easy and ready administration for [i]t has few exceptions or conditions to stir contentions, cause delays, and invite litigations." *Vella v. Ford Motor Co.*, 421 U.S. 1, 95 S. Ct. 1381, LED. 2d 682 (1975). An injured seaman is entitled to every benefit of the doubt when there is any ambiguity regarding whether maintenance and cure should be paid. *Vaughan v. Atkinson*, 369 U.S. 527, 530-331, 82 S.Ct.997, 999-1000, 8 LED.2d 88 (1962); Aguilar *v. Standard Oil Co.*, 318 U.S. 724, 87 LED. 1107, 63 S.Ct. 930 (1943). See also, *Atlantic Sounding Co., Inc. v. Townsend*, 29 S.Ct. 2561 (2009).

## COUNT I - GENERAL MARITIME LAW NEGLIGENCE AGAINST MSC CRUISES

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through sixty seven (67) as though they were fully set forth herein and further alleges:

68.     Defendant, MSC CRUISES, S.A. ("MSC CRUISES"), as MR. PEREZ PAGOAGA's borrowing maritime employer, owed Plaintiff duties of care, including but not

limited to the following:

    a. The duty to provide Plaintiff with a reasonably safe working environment;

    b. The duty to provide Plaintiff with reasonably safe conditions in which to work;

    c. The duty to provide, implement, and/or enforce safety rules, policies, and procedures to keep the vessel in a safe condition;

    d. The duty to provide prompt, proper and adequate medical care;

    e. The duty to instruct and/or train its crewmembers to perform tasks with a procedure, method or policy that would avoid injuries, when Defendant knew or should have known that said tasks would result in risk of injury; and

    f. The duty to implement safe and reasonable work methods.

69. On October 24, 2024, and thereafter, MR. PEREZ PAGOAGA was severely injured as a directly and proximate result of MSC CRUISES's breach of the above duties as follows:

    a. Failure to provide a safe place to work by failure to properly assess the risks of the various job tasks and activities MR. PEREZ PAGOAGA was assigned to during the times he was working aboard the cruise ship in question for the Defendant;

    b. Failure to provide a safe place to work by failing to implement appropriate safety precautions and procedures and a safe method of operation regarding bunk beds;

    c. Failure to properly evaluate the different job tasks and activities required of MR. PEREZ PAGOAGA in order to implement appropriate safety precautions to avoid the type of injuries MR. PEREZ PAGOAGA suffered as a result of the incident as set forth above;

    d. Failure to provide a safe place to work by failure to have the ship's doctors and supervisors communicate with each other about the physical capacities of MR. PEREZ PAGOAGA the type of complaints he was expressing regarding his physical condition, and failing to properly evaluate his physical injuries and capabilities and then determine the appropriateness of the various job tasks and activities that would be required of MR. PEREZ PAGOAGA if he was returned to work;

    e. Failure to provide a safe place to work by assignment of MR. PEREZ PAGOAGA to job tasks and activities that posed unreasonable risks of injury to MR. PEREZ PAGOAGA;

f.   In that the master, owner and/or operators of the vessel failed to provide the Plaintiff with a reasonably safe ship and appliances and appurtenances and to keep same in a reasonably safe condition;

g.   In that the master, owners and/or operators of the vessel failed to provide a reasonably safe place for the Plaintiff to work and perform his duties;

h.   In that the master, owners and/or operators of the vessel failed to maintain said vessel and its equipment appliances in a reasonably safe condition;

i.   That said vessel was permitted and allowed to go upon the waters in an unsafe condition and that such condition of said vessel and any and all damage and injuries were done occasioned and occurred with the privity and knowledge of the Defendant, its corporate officers, agents, servants or employees at or prior to the time of the commencement of the voyage;

j.   Defendant and its corporate officers, servants, agents, employees and other persons for whom the Defendants are responsible, failed to take reasonable precautions for the Plaintiff under the circumstances and conditions then existing to the knowledge of the Defendant.  Said Defendant had actual and/or constructive notice of unsafe and dangerous conditions;

k.   Failing to provide a safe place to work by failing to implement a reasonable work schedule which would not have required MR. PEREZ PAGOAGA to work an excessive number of hours, seven days a week without adequate rest breaks and exercises;

l.   By failing to provide prompt, proper and adequate medical care and treatment, which included failing to follow the advice of doctors chosen by the Defendant to treat MR. PEREZ PAGOAGA for his injuries;

m.   Failure to provide a reasonably safe place to work by failing to adequately evaluate MR. PEREZ PAGOAGA' medical condition during the time he was employed by the Defendant, and failure to discover any physical injuries he suffered from which would have precluded him from performing the heavy work he was assigned to after he suffered his hand, knee, back and neck injuries;

n.   Negligently assigning MR. PEREZ PAGOAGA to work that caused him to suffer an injury to his hand, knee, back and neck;

o.   Negligently assigning MR. PEREZ PAGOAGA to load and unload unduly heavy boxes;

p.   Failure to provide a trolley;

q.  Failure to properly assess the work place for hazards and to correct the hazard.

r.  By assigning to MR. PEREZ PAGOAGA physically taxing job tasks which were unreasonably dangerous to his health;

s.  By failure to investigate and recognize the health hazards to MR. PEREZ PAGOAGA that were present in performing the multitude of job tasks required of him in the manner prescribed by the Defendant;

t.  By failure to properly supervise the work place in order to avoid the type of injuries, suffered by the Plaintiff as set forth above;

u.  By failure to conduct appropriate ergonomic studies of the work place and implement safe methods and practices of work in order to avoid injuries;

v.  Failure to provide a safe work place;

w.  Failure to provide MR. PEREZ PAGOAGA with prompt, proper and adequate medical care and treatment before and after he was sent shoreside;

x.  Failure to provide MR. PEREZ PAGOAGA with prompt, proper and adequate medical care and treatment after he was discharged from the vessel; and

y.  Other acts and/or omissions constituting negligence that will be found in discovery and proven at trial.

70.  Defendant, MSC CRUISES, knew or should have known of the foregoing conditions and had the opportunity to correct them prior to MR. PEREZ PAGOAGA's accident/injury.

71.  Defendant, MSC CRUISES, had actual and/or constructive notice that the duties assigned to Plaintiff without proper equipment such as a trolley or other assistance or rest was dangerous prior to Plaintiff's injury.

72.  As a direct and proximate result of the negligence of the Defendant, its agents and/or employees, MR. PEREZ PAGOAGA, was caused to suffer severe bodily injury, was and still is incapacitated from work, will in the future be unable to engage in his vocation as a crewmember and/or any other occupation requiring the full use of his body and limbs.

73.     As a further direct and proximate result of this injury suffered by MR. PEREZ PAGOAGA, the Plaintiff has and will suffer pain and mental anguish and has incurred medical expenses for the alleviation of his injuries, suffered a diminishment of earning capacity as well as lost wages and has lost the enjoyment of leading a normal life, all of which injuries are permanent and continuing in nature.

WHEREFORE Plaintiff, CARLOS HUMBERTO PEREZ PAGOAGA, demands all damages allowed under the general maritime law, including but not limited to compensatory damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so triable.

### COUNT II - UNSEAWORTHINESS AGAINST MSC CRUISES, S.A.

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through sixty seven (67) as though they were fully set forth herein and further alleges:

74.     Defendant, MSC CRUISES, S.A., as the vessel owner *pro hac vice* and/or operator of the M/V *MSC FANTASIA*, owed MR. PEREZ PAGOAGA, who was a seaman and assigned to said vessel, the absolute nondelegable duty to provide a seaworthy vessel. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S. Ct. 926 (1960). The duty to provide a seaworthy vessel includes the duty to furnish a vessel and appurtenances reasonably fit for their intended use. *Id*. The duty is not any less with respect to a temporary unseaworthy condition. *Id*.

75.     On October 24, 2024, and thereafter, the Plaintiff was injured as a direct and proximate result of MSC CRUISES, S.A.'s breach of its duty to provide a seaworthy vessel. The M/V *MSC FANTASIA* was unseaworthy in the following respects:

    a.  The subject vessel had an improper method of operation which created an unreasonably dangerous condition and rendered the vessel unfit;

    b.  The vessel's bunk beds were not fit for their intended purposes;

c.  The job methods and procedures were not reasonably fit for the intended purposes as they posed an unsafe method of operation and an unreasonable risk of injury;

d.  The vessel did not have a fit crew;

e.  That said vessel was permitted and allowed to go upon the waters in an unsafe and unseaworthy condition and that such condition of said vessel and any and all damage and injuries were done occasioned and occurred with the privity and knowledge of the Defendant, its corporate officers, agents, servants or employees at or prior to the time of the commencement of the voyage;

f.  Defendant and its corporate officers, servants, agents, employees and other persons for whom the Defendant is responsible failed to take suitable precautions for the Plaintiff under the circumstances and conditions then existing which were within the knowledge of the Defendant. Said Defendant had actual and constructive notice of unsafe, dangerous, and unseaworthy conditions;

g.  The vessel had an unsafe and unfit method of operation that sent injured crewmembers, including Plaintiff, back to work in an injured condition, aggravating and exacerbating their conditions;

h.  The vessel lacked adequate and fit medical crew to address Plaintiff's injuries;

i.  The ship's physicians were not properly trained, educated, or experienced in the diagnosis of back and hip;

j.  The vessel's medical staff were not properly trained, educated or experienced in the review of crewmember medical care to ensure that Defendant's crewmembers, including the Plaintiff herein, receive prompt, proper and adequate medical treatment; and

k.  Other acts and/or omissions of unseaworthiness that will be found in discovery and proven at trial.

76.     As a direct and proximate result of the unseaworthiness of the vessel, MR. PEREZ PAGOAGA, was caused to suffer severe bodily injury, was and still is incapacitated from work, and will in the future be unable to engage in Plaintiff's vocation as a boat worker and/or any other occupation requiring the full use of his body and limbs.

77.     As a further direct and proximate result of the unseaworthiness of the vessel and the injuries suffered by MR. PEREZ PAGOAGA, the Plaintiff has and will continue to suffer pain and mental anguish and has incurred medical expenses for the alleviation of his injuries, suffered

a diminishment of earning capacity as well as lost wages and has lost the enjoyment of leading a normal life, all of which injuries are permanent and continuing in nature.

WHEREFORE Plaintiff, CARLOS HUMBERTO PEREZ PAGOAGA, demands all damages allowed under the general maritime law, including but not limited to compensatory damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so triable.

### COUNT III - UNSEAWORTHINESS AGAINST FANTASIA CRUISE LTD.

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through sixty seven (67) as though they were fully set forth herein and further alleges:

78.     Defendant, FANTASIA CRUISE LTD., as the vessel owner *pro hac vice* and/or operator of the M/V *MSC FANTASIA*, owed MR. PEREZ PAGOAGA, who was a seaman and assigned to said vessel, the absolute nondelegable duty to provide a seaworthy vessel. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S. Ct. 926 (1960). The duty to provide a seaworthy vessel includes the duty to furnish a vessel and appurtenances reasonably fit for their intended use. *Id.* The duty is not any less with respect to a temporary unseaworthy condition. *Id.*

79.     On October 24, 2024, and thereafter, the Plaintiff was injured as a direct and proximate result of FANTASIA CRUISE LTD.'s breach of its duty to provide a seaworthy vessel. The M/V *MSC FANTASIA* was unseaworthy in the following respects:

    a.  The subject vessel was not reasonably fit for its intended purpose because its bunk beds were unreasonably dangerous and rendered the vessel unfit;

    b.  The job methods and procedures were not reasonably fit for the intended purposes as they posed an unsafe method of operation and an unreasonable risk of injury;

    c.  The vessel did not have a fit crew;

    d.  That said vessel was permitted and allowed to go upon the waters in an unsafe and unseaworthy condition and that such condition of said vessel and any and all

damage and injuries were done occasioned and occurred with the privity and knowledge of the Defendant, its corporate officers, agents, servants or employees at or prior to the time of the commencement of the voyage;

e. Defendant and its corporate officers, servants, agents, employees and other persons for whom the Defendant is responsible failed to take suitable precautions for the Plaintiff under the circumstances and conditions then existing which were within the knowledge of the Defendant. Said Defendant had actual and constructive notice of unsafe, dangerous, and unseaworthy conditions;

f. The vessel had an unsafe and unfit method of operation that sent injured crewmembers, including Plaintiff, back to work in an injured condition, aggravating and exacerbating their conditions;

g. The vessel lacked adequate and fit medical crew to address Plaintiff's injuries;

h. The ship's physicians were not properly trained, educated, or experienced in the diagnosis of back and hip;

i. The vessel's medical staff were not properly trained, educated or experienced in the review of crewmember medical care to ensure that Defendant's crewmembers, including the Plaintiff herein, receive prompt, proper and adequate medical treatment; and

j. Other acts and/or omissions of unseaworthiness that will be found in discovery and proven at trial.

80. As a direct and proximate result of the unseaworthiness of the vessel, MR. PEREZ PAGOAGA, was caused to suffer severe bodily injury, was and still is incapacitated from work, and will in the future be unable to engage in Plaintiff's vocation as a boat worker and/or any other occupation requiring the full use of his body and limbs.

81. As a further direct and proximate result of the unseaworthiness of the vessel and the injuries suffered by MR. PEREZ PAGOAGA, the Plaintiff has and will continue to suffer pain and mental anguish and has incurred medical expenses for the alleviation of his injuries, suffered a diminishment of earning capacity as well as lost wages and has lost the enjoyment of leading a normal life, all of which injuries are permanent and continuing in nature.

WHEREFORE Plaintiff, CARLOS HUMBERTO PEREZ PAGOAGA, demands all damages allowed under the general maritime law, including but not limited to compensatory

damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so triable.

### COUNT IV - MAINTENANCE AND CURE CLAIM AGAINST MSC MALTA

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through sixty seven (67) as though they were fully set forth herein and further alleges:

82.     Maintenance and cure is an ancient legal duty that obligates a vessel owner to provide for a seaman who becomes ill or injured in the service of the ship. *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962); *Varela v. Dantor Cargo Shipping, Inc.*, 2017 WL 7184605, at *2 (S.D. Fla. Nov. 14, 2017); *Ramirez v. Carolina Dream, Inc.*, 760 F.3d 119, 122 (1st Cir. 2014).

83.     The Defendant, MSC MALTA, owes its crewmembers, including MR. PEREZ PAGOAGA, the duty to provide maintenance and cure if said crewmembers are injured while in the service of the ship. *Garay v. HOLLAND*, 904 F.2d 1527, 1529 (11th Cir. 1990). The obligation to provide maintenance and cure is an implied provision in maritime employment contracts. *Id.* (quoting *Aguilar v. Std. Oil Co.*, 318 U.S. 724, 730, 63 S. Ct. 930, 933-34 (1943)). The duty to provide maintenance and cure continues until a seaman, such as Plaintiff, is unequivocally declared to have reached maximum medical improvement, or "MMI". *Id.* (citing *Vella v. Ford Motor Co.*, 421 U.S. 1, 4-6, 95 S. Ct. 1381, 1383-84 (1975)).

84.     Additionally, or in the alternative, MSC MALTA undertook the duty to provide MR. PEREZ PAGOAGA with medical care and maintenance and cure benefits for a short time following his injuries.

85.     Under the General Maritime Law, Plaintiff, as a seaman, was and still is entitled to recover maintenance (found, food & lodging) and cure (medical care) from the shipowner and/or the employer until Plaintiff is declared to have reached Maximum Medical Improvement (MMI)

and/or Maximum Medical Cure (MMC). Maintenance & cure includes unearned wages (regular wages, overtime, vacation pay and tips), which were reasonably anticipated to the end of the contract or voyage, whichever is longer.

86. The obligation to provide maintenance & cure imposes an affirmative obligation to seek out and arrange appropriate medical care for seamen such as MR. PEREZ PAGOAGA.

87. To be effective an MMI declaration must be unequivocal. Any doubts or controversy regarding whether the seaman has achieved MMI must be resolved in favor of the seaman.

88. Defendant, MSC MALTA, has not obtained a maximum medical cure declaration for Plaintiff's medical conditions. To date, MR. PEREZ PAGOAGA has not reached MMC and no doctor has declared that Plaintiff has achieved MMC.

89. Defendant, MSC MALTA, failed to properly assess MR. PEREZ PAGOAGA's hand condition.

90. Defendant, MSC MALTA, failed to properly assess MR. PEREZ PAGOAGA's knee condition.

91. Defendant, MSC MALTA, failed to properly assess MR. PEREZ PAGOAGA's lower back condition.

92. Defendant, MSC MALTA, failed to properly assess MR. PEREZ PAGOAGA's neck condition.

93. MSC MALTA has not provided or even attempted to provide MR. PEREZ PAGOAGA any of his overdue maintenance & cure.

94. MR. PEREZ PAGOAGA is owed maintenance and cure for any condition that arises or manifests or occurs while he is in the service of the vessel until the point where he has

▪ **BILLERA LAW** ▪

**2201 NW Corporate Blvd., Ste. 200, Boca Raton, FL 33431 ▪ TEL #(561) 500-7777 ▪ FAX #(561) 500-7778**
Page **20** of **38**

been declared to be at maximum medical cure, even if the condition arises while Plaintiff is shoreside obtaining medical treatment. *Duarte v. HOLLAND AMERICA LINE, NV,* 761 So. 2d 367, 368 (Fla. 3d DCA 2000).

95.     At all times material hereto, MSC MALTA arbitrarily, willfully and callously delayed, failed and/or refused to pay Plaintiff's entire maintenance and cure; and/or willfully and callously delayed, failed and/or refused to provide the Plaintiff the level of cure that the Plaintiff needs to achieve MMI.

96.     As a result of the Defendant MSC MALTA's failure to provide maintenance and cure, the Plaintiff was injured about his body and extremities, suffered physical pain and suffering, mental anguish, loss of enjoyment of life, disability, disfigurement, inconvenience, aggravation of any previously existing condition, medical expenses for the care and treatment of his injuries in the past and for the foreseeable future, suffered physical handicap, past and future lost wages, past and future loss of earning capacity, loss of found, and his working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

97.     MR. PEREZ PAGOAGA has retained an attorney to enforce his maintenance and cure rights and remedy Defendant's breach of its maintenance and cure obligations, and he is entitled to his attorney's fees for the obtaining of said benefits.

WHEREFORE Plaintiff, CARLOS HUMBERTO PEREZ PAGOAGA, demands all damages allowed under the general maritime law, including but not limited to compensatory damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so triable.

▪ **BILLERA LAW** ▪

## COUNT V - MAINTENANCE AND CURE AGAINST FANTASIA CRUISE LTD.

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through sixty seven (67) as though they were fully set forth herein and further alleges:

98.     The Defendant, FANTASIA CRUISE LTD., as the vessel owner, owes its crewmembers, including MR. PEREZ PAGOAGA, the duty to provide maintenance and cure if said crewmembers are injured while in the service of the ship. *Garay v. Holland*, 904 F.2d 1527, 1529 (11th Cir. 1990); *Gaspard v. Taylor Diving & Salvage Co.*, 649 F.2d 372, 375 (5th Cir. 1981).

99.     The obligation to provide maintenance and cure arises directly out of the connection between the crewmember and a vessel, even where the crewmember has a different Maritime employer. The duty to provide maintenance and cure continues until a seaman, such as Plaintiff, is unequivocally declared to have reached maximum medical improvement, or "MMI". *Id.* (citing *Vella v. Ford Motor Co.*, 421 U.S. 1, 4-6, 95 S. Ct. 1381, 1383-84 (1975)).

100.    Additionally, or in the alternative, FANTASIA CRUISE LTD., undertook the duty to provide MR. PEREZ PAGOAGA with medical care and maintenance and cure benefits for a short time following his injuries.

101.    Under the General Maritime Law, Plaintiff, as a seaman, was and still is entitled to recover maintenance (found, food & lodging) and cure (medical care) from the shipowner and/or the employer until Plaintiff is declared to have reached Maximum Medical Improvement (MMI) and/or Maximum Medical Cure (MMC). Maintenance & cure includes unearned wages (regular wages, overtime, vacation pay and tips), which were reasonably anticipated to the end of the contract or voyage, whichever is longer.

102.    The obligation to provide maintenance & cure imposes an affirmative obligation to seek out and arrange appropriate medical care for seamen such as MR. PEREZ PAGOAGA.

### ▪ BILLERA LAW ▪

103.   To be effective an MMI declaration must be unequivocal. Any doubts or controversy regarding whether the seaman has achieved MMI must be resolved in favor of the seaman.

104.   Defendant, FANTASIA CRUISE LTD., has not obtained a maximum medical cure declaration for Plaintiff's medical conditions. To date, MR. PEREZ PAGOAGA has not reached MMC and no doctor has declared that Plaintiff has achieved MMC.

105.   Defendant, FANTASIA CRUISE LTD., failed to properly assess MR. PEREZ PAGOAGA's hand condition.

106.   Defendant, FANTASIA CRUISE LTD., failed to properly assess MR. PEREZ PAGOAGA's knee condition.

107.   Defendant, FANTASIA CRUISE LTD., failed to properly assess MR. PEREZ PAGOAGA's lower back condition.

108.   Defendant, FANTASIA CRUISE LTD., failed to properly assess MR. PEREZ PAGOAGA's neck condition.

109.   FANTASIA CRUISE LTD., has not provided or even attempted to provide MR. PEREZ PAGOAGA any of his overdue maintenance & cure.

110.   MR. PEREZ PAGOAGA is owed maintenance and cure for any condition that arises or manifests or occurs while he is in the service of the vessel until the point where he has been declared to be at maximum medical cure, even if the condition arises while Plaintiff is shoreside obtaining medical treatment. *Duarte v. HOLLAND AMERICA LINE, NV*, 761 So. 2d 367, 368 (Fla. 3d DCA 2000).

111.   At all times material hereto, FANTASIA CRUISE LTD., arbitrarily, willfully and callously delayed, failed and/or refused to pay Plaintiff's entire maintenance and cure; and/or

willfully and callously delayed, failed and/or refused to provide the Plaintiff the level of cure that the Plaintiff needs to achieve MMI.

112.    As a result of the Defendant FANTASIA CRUISE LTD.'s failure to provide maintenance and cure, the Plaintiff was injured about his body and extremities, suffered physical pain and suffering, mental anguish, loss of enjoyment of life, disability, disfigurement, inconvenience, aggravation of any previously existing condition, medical expenses for the care and treatment of his injuries in the past and for the foreseeable future, suffered physical handicap, past and future lost wages, past and future loss of earning capacity, loss of found, and his working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

113.    MR. PEREZ PAGOAGA has retained an attorney to enforce his maintenance and cure rights and remedy Defendant's breach of its maintenance and cure obligations, and he is entitled to his attorney's fees for the obtaining of said benefits.

WHEREFORE Plaintiff, CARLOS HUMBERTO PEREZ PAGOAGA, demands all damages allowed under the general maritime law, including but not limited to compensatory damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so triable.

## COUNT VI - FAILURE TO PROVIDE PROMPT, PROPER AND ADEQUATE MEDICAL CARE AGAINST MSC CRUISES

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through sixty seven (67) as though they were fully set forth herein and further alleges:

114.    Under the Maritime Law, Defendant, MSC CRUISES, as Plaintiff's employer and/or borrowing employer, owed the duty to provide prompt, proper and adequate medical care to its seamen, including MR. PEREZ PAGOAGA, who fall ill or suffer injury in the service of a

vessel. *De Zon v. American President Lines*, 318 U.S. 660, 667–68, 63 S. Ct. 814, 87 L. Ed. 1065 (1943); *Picou v. American Offshore Fleet, Inc.*, 576 F.2d 585, 587 (5th Cir. 1978).

115.    Defendant MSC CRUISES's negligent failure to provide prompt, proper and adequate medical care gives rise to a Maritime Law claim separate from MR. PEREZ PAGOAGA's Maritime Law negligence claims for the fall incident itself, and separate from Defendant's failure to provide maintenance and cure. *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 422-23, 129 S. Ct. 2561, 2574 (2009) (citing *Cortes v. Baltimore Insular Lines*, 287 U.S. 367, 374-75, 53 S. Ct. 173, 175-76 (1932)); *Joyce v. Atlantic Richfield Co.*, 651 F.2d 676, 685 (10th Cir. 1981) ("Negligent failure to provide prompt medical attention to a seriously injured seaman gives rise to a separate claim for relief.").

116.    Defendant negligently failed to provide MR. PEREZ PAGOAGA with prompt, proper, adequate, and complete medical care. MSC CRUISES's negligent conduct includes, but is not limited to the following:

    a.   Failure to promptly, properly, and adequately diagnose and treat Plaintiff's medical condition(s) and related injuries when he presented to the vessel's medical center and as he continued to complain as his condition/medical injuries became aggravated; and/or

    b.   Failure to provide Plaintiff with prompt, proper, and adequate medical care when he sought medical attention for his medical condition(s) and related injuries; and/or

    c.   Failure to select, retain and/or utilize competent, skilled and properly trained medical care providers on board and shoreside to provide Plaintiff with prompt, proper and adequate medical care; and/or

    d.   Failure to utilize proper and adequate medical equipment with which to provide Plaintiff proper and adequate medical care; and/or

    e.   Failure to properly medically manage Plaintiff's medical care after he became injured by Defendants; and/or

    f.   Failure to provide Plaintiff prompt, proper, and adequate medical care, which aggravated his underlying medical condition and caused him medical injuries and additional pain and disability; and/or

g.  Negligently sending Plaintiff back to work in an injured condition; and/or

h.  Failure to timely disembark Plaintiff to provide prompt, proper, and adequate medical treatment ashore without delay; and/or

i.  Failure to assess Plaintiff's hand condition; and/or

j.  Failure to assess Plaintiff's knee condition; and/or

k.  Failure to assess Plaintiff's lower back condition; and/or

l.  Failure to assess Plaintiff's neck condition; and/or

m.  Not reimbursing and/or not timely reimbursing Plaintiff for his out-of-pocket medical expenses, and/or

n.  Not authorizing and/or providing Plaintiff with prompt shoreside medical care, and/or

o.  Not authorizing and/or providing Plaintiff with medical care after being sent to his home country, and/or

p.  Prematurely terminating Plaintiff's medical care.

117.  As a direct and proximate result of Defendant, MSC CRUISES's failure to provide Plaintiff with prompt, proper and adequate medical treatment, MR. PEREZ PAGOAGA suffered additional pain, suffering, and disability, aggravation of his underlying injury, and Plaintiff's recovery is prolonged.

118.  In addition, MR. PEREZ PAGOAGA, was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of a previously existing condition, incurred additional medical expenses, suffered physical handicap, lost wages, income lost in the past, and Plaintiff's working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

WHEREFORE Plaintiff, CARLOS HUMBERTO PEREZ PAGOAGA, demands all damages allowed under the general maritime law, including but not limited to compensatory damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so triable.

## COUNT VII - FAILURE TO PROVIDE PROMPT, PROPER AND ADEQUATE MEDICAL CARE AGAINST FANTASIA CRUISE LTD.

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through sixty seven (67) as though they were fully set forth herein and further alleges:

119. Under the Maritime Law, Defendant, FANTASIA CRUISE LTD., as Plaintiff's borrowing employer, owed the duty to provide prompt, proper and adequate medical care to its seamen, including MR. PEREZ PAGOAGA, who fall ill or suffer injury in the service of a vessel. *De Zon v. American President Lines*, 318 U.S. 660, 667–68, 63 S. Ct. 814, 87 L. Ed. 1065 (1943); *Picou v. American Offshore Fleet, Inc.*, 576 F.2d 585, 587 (5th Cir. 1978).

120. Defendant FANTASIA CRUISE LTD.'s negligent failure to provide prompt, proper and adequate medical care gives rise to a Maritime Law claim separate from MR. PEREZ PAGOAGA's Maritime Law negligence claims for the fall incident itself, and separate from Defendant's failure to provide maintenance and cure. *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 422-23, 129 S. Ct. 2561, 2574 (2009) (citing *Cortes v. Baltimore Insular Lines*, 287 U.S. 367, 374-75, 53 S. Ct. 173, 175-76 (1932)); *Joyce v. Atlantic Richfield Co.*, 651 F.2d 676, 685 (10th Cir. 1981) ("Negligent failure to provide prompt medical attention to a seriously injured seaman gives rise to a separate claim for relief.").

121. Defendant negligently failed to provide MR. PEREZ PAGOAGA with prompt, proper, adequate, and complete medical care. FANTASIA CRUISE LTD.'s negligent conduct includes, but is not limited to the following:

a. Failure to promptly, properly, and adequately diagnose and treat Plaintiff's medical condition(s) and related injuries when he presented to the vessel's medical center and as he continued to complain as his condition/medical injuries became aggravated; and/or

b. Failure to provide Plaintiff with prompt, proper, and adequate medical care when he sought medical attention for his medical condition(s) and related injuries; and/or

c. Failure to select, retain and/or utilize competent, skilled and properly trained medical care providers on board and shoreside to provide Plaintiff with prompt, proper and adequate medical care; and/or

d. Failure to utilize proper and adequate medical equipment with which to provide Plaintiff proper and adequate medical care; and/or

e. Failure to properly medically manage Plaintiff's medical care after he became injured by Defendants; and/or

f. Failure to provide Plaintiff prompt, proper, and adequate medical care, which aggravated his underlying medical condition and caused him medical injuries and additional pain and disability; and/or

g. Negligently sending Plaintiff back to work in an injured condition; and/or

h. Failure to timely disembark Plaintiff to provide prompt, proper, and adequate medical treatment ashore without delay; and/or

i. Failure to assess Plaintiff's hand condition; and/or

j. Failure to assess Plaintiff's knee condition; and/or

k. Failure to assess Plaintiff's lower back condition; and/or

l. Failure to assess Plaintiff's neck condition; and/or

m. Not reimbursing and/or not timely reimbursing Plaintiff for his out-of-pocket medical expenses, and/or

n. Not authorizing and/or providing Plaintiff with prompt shoreside medical care, and/or

o. Not authorizing and/or providing Plaintiff with medical care after being sent to his home country, and/or

p. Prematurely terminating Plaintiff's medical care.

122. As a direct and proximate result of Defendant, FANTASIA CRUISE LTD.'s failure

to provide Plaintiff with prompt, proper and adequate medical treatment, MR. PEREZ PAGOAGA

suffered additional pain, suffering, and disability, aggravation of his underlying injury, and Plaintiff's recovery is prolonged.

123.    In addition, MR. PEREZ PAGOAGA, was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of a previously existing condition, incurred additional medical expenses, suffered physical handicap, lost wages, income lost in the past, and Plaintiff's working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

WHEREFORE Plaintiff, CARLOS HUMBERTO PEREZ PAGOAGA, demands all damages allowed under the general maritime law, including but not limited to compensatory damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so triable.

## COUNT VIII - NEGLIGENCE AGAINST DEFENDANTS UNDER PANAMANIAN LAW

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through sixty seven (67) as though they were fully set forth herein and further alleges:

124.    In the event that this Court rules US General Maritime law does not apply, Plaintiff brings a cause of action pursuant to Chapter 7, Title I of Law Decree No. 8 of 1998, Articles 80 through 83, CL-001, Executive Decree 86 of 2006, and Articles 1644-A and 1645 of the Civil Code of Panama against Defendants MSC CRUISES and FANTASIA CRUISE LTD.

125.    Further, Civil Code Art 986 provides: Those who in the performance of their obligations incur in fraud, negligence, or late payment, and those who in any way contravene the

tenor of such obligations, shall be subject to indemnification for the damages caused.

126. The conditions for a Tort action under Panamanian law require a Plaintiff to establish:

    a. That he's suffering a damage or injury; and

    b. That the damage was the result of negligent act or omission imputable to ship-owner; and

    c. That there is a direct causation between the damage and the negligent conduct.

127. While the term "negligence" is not specifically defined under Panama law, it is generally understood to mean the exercise of reasonable care or ordinary prudence under the circumstances.

128. Defendants, when exercising their duty to exercise reasonable care or ordinary prudence, should have ensured that equipment and facilities available to seafarers onboard are safe and in good condition in order to prevent any incident and/or accident.

129. On October 24, 2024, and thereafter, MR. PEREZ PAGOAGA suffered an injury to his hand, knee, back and neck when he was ordered to lift and empty wet bins or waste that were unreasonably heavy. Plaintiff was not provided protective equipment or assistance for handling he unreasonably heavy bins, including but not limited to a back brace or a trolley.

130. During or near his last lift, MR. PEREZ PAGOAGA felt a sharp pain in his hand, knee, lower back and neck.

131. Plaintiff was severely injured by Defendants failure to provide him adequate medical care.

132. To date, Plaintiff's knee, lower back and neck conditions have never been properly diagnosed or treated.

133. The severity of his conditions more than likely could have been avoided if Plaintiff

had been given proper medical treatment following the first signs of his condition on October 24, 2024 and/or November 6, 2024.

134.   Plaintiff was severely injured by Defendants failure to properly investigate his medical condition and accurately diagnose his condition.

135.   Plaintiff continues to require medical treatment for his hand condition.

136.   Plaintiff continues to require medical treatment for his knee condition.

137.   Plaintiff continues to require medical treatment for his lower back condition.

138.   Plaintiff continues to require medical treatment for his neck condition.

139.   Defendants had a duty to provide proper medical care and to monitor said medical care under Panamanian law.

140.   Plaintiff is entitled to receive compensation pursuant to Panamanian law for all damages arising from Defendants' negligence.

141.   Plaintiff is entitled to receive compensation pursuant to Panamanian law for all damages arising from Defendants' negligence.

142.   Defendants have breached their obligation to compensate Plaintiff to date.

143.   As a result of Defendants' failure to compensate Plaintiff, he is suffering from economic hardship.

144.   Plaintiff's injuries are due to the fault and negligence of Defendants, MSC CRUISES and FANTASIA CRUISE LTD., as follows:

  a.   Failure to use reasonable care to prevent occupational hazards, including knee, lower back and neck injuries from extremely strenuous activities as those to which Plaintiff was exposed;

  b.   Failure to comply with Law Decree No. 8 of 1998, Chapter 9, Art. 113, "Prevention of Seafarer's Labor Accidents," which requires the shipowner to prevent accidents;

  c.   Failure to issue and institute regulations for the safety and prevention of shore side

medical negligence;

d. Failure to provide Plaintiff medical care;

e. Failure to properly monitor Plaintiff's medical care; and

f. Failure to reassign Plaintiff to less strenuous activities following him suffering injuries to his back, hips and pelvis.

145. As a direct and proximate result of the foregoing breach of obligation by Defendants the Plaintiff sustained severe and permanent injury and disability to his back, hips and pelvis, and psychological and emotional damages.

WHEREFORE, Plaintiff demands judgement against Defendants MSC CRUISES and FANTASIA CRUISE LTD., for compensatory damages, pain, suffering, lost wages, loss of future earning capacity, and the costs of future medical care, and including attorney's fees and costs, and prejudgment interest and request a trial on all issues so triable.

## COUNT IX - 
## BREACH OF CONTRACTUAL OBLIGATIONS UNDER PANAMANIAN LAW

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through sixty seven (67) as though they were fully set forth herein and further alleges:

146. Executive Law Decree n°86 of February 22, 2013 transposing into Panamanian laws the Maritime Labour Convention, 2006, provides:

147. Article 5: All Shipowners of vessels with Panamanian registration shall ensure equity of life and work conditions for both nationals as well as foreigners who work on board the vessels.

148. Article 7: In case of conflict between two parties regarding the applicability or interpretation of regulatory or supplementary provisions or in International Conventions, the provision or interpretation most favorable to seafarers shall prevail.

### ▪ BILLERA LAW ▪

2201 NW Corporate Blvd., Ste. 200, Boca Raton, FL 33431 ▪ TEL #(561) 500-7777 ▪ FAX #(561) 500-7778

Page **32** of **38**

149.    Article 170: Shipowners shall be responsible for protecting the health of, and providing medical care to, all Seafarers who render services on board their vessels.

150.    Article 171: Shipowners must bear the costs of illnesses or accidents of all Seafarers employed in their vessel occurred between the date of initiating service and the date considered as the date when Seafarers have been duly repatriated, or that derive from the employment carried out between those dates.

151.    Article 172: Shipowners must provide insurance coverage in order to guarantee the payment of an indemnity in the event of death or long-term disability of Seafarers, as a result of a work accident, illness or occupational risk.

152.    Article 173: Shipowners must bear, directly or through an insurance, the expenses for medical care, including any medical treatment, surgery, hospitalization, necessary medicines and therapeutic devices, as well as accommodation and food away from home until recuperation of ill or injured Seafarers, or until the permanent nature of the illness or disability has been proven.

153.    Article 174: Shipowners must bear all funeral costs in the event of death onboard or ashore during the employment period.

154.    Article 175: The Shipowner's liability with regards to medical care expenses, hospitalization, accommodation and food shall extend for sixteen (16) weeks as of the date on which the injury took place or the start of the illness.

155.    Article 176: When the illness or injury incapacitates a Crewmember for work, the Shipowner must pay the totality of the wage while the ill or injured Seafarer is onboard, or until recovery, if occurred first. Benefits may be excluded from this payment.

156.    Article 177: Shipowners shall be exempted from all liability in the following events:

157. When the injury has not occurred as a result of service on the vessel.

158. When the injury or illness is attributed to the deliberate, improper conduct of the ill, injured or deceased Seafarer.

159. When the illness or physical deficiency are intentionally hidden at the time of employment.

160. Article 178: For the purposes of applying this Executive Decree, the following shall not be considered work accidents:

161. An accident deliberately caused by the Seafarer.

162. An accident caused by the Seafarer's negligence, being considered as such a verified disobedience to an expressed order, the culpable or obvious non-compliance with the rules for the prevention of accidents and safety, voluntary drunkenness, and the use of illicit drugs.

163. Article 180: It is the Shipowner's obligation to adopt effective safety and health policies and programs at work, including an evaluation of risk, as well as training and education of Seafarers, with the purpose of preventing work accidents, professional injuries or illnesses, including measures to reduce and prevent the risk of exposure on damaging levels to environmental factors and chemical substances, as well as the risk of injuries or illnesses that may derive from the use of equipment and machinery onboard the vessel.

164. Article 181: Shipowners must be under the obligation to provide Seafarers with protective equipment and other devices for the prevention of accidents, together with rules for the use of said protection equipment or devices.

165. Article 182: Shipowners must be under the obligation to ensure that machinery used onboard is properly protected, and to ban the use of machinery that lack the adequate protection devices.

166.    Article 183: Vessels that have at least five Seafarers on board must create a Safety Committee comprised by Crewmembers.

167.    The Safety Committee must ensure the continuous improvement of protection and health at work, taking into consideration preventive measures that include the control of engineering and design, the use of the personal protection equipment, as well as the requirements for inspecting, notifying and correcting any unsafe conditions and investigating and notifying any work accidents onboard.

168.    Article 185: Shipowners must be under the obligation to report the occurrence of any work accident to the Competent Authority, as well as any injuries and occupational illnesses in a proper manner, taking into consideration the guidelines provided by the International Labour Organization with regards to notification and recording of work accidents and occupational illnesses.

169.    On October 24, 2024, Plaintiff suffered knee, lower back and neck injuries while in Defendants' service as a crewmember and seaman.

170.    As a result, Defendants had an obligation to provide contractual compensation for Plaintiff that arises under Law Decree No. 8 of 1998, Articles 86, 87. CL-001.

171.    Per the articles stated above, and Article 87 of Law Decree No. 8 of 1998, the shipowner is required to provide "assistance to the crewmember until he fully recovers from his illness or injury, or until the permanent nature of the illness or disability is confirmed."

172.    Per the articles stated above, and Article 86 of Law Decree No.8 of 1998, the shipowner is also required to provide Plaintiff assistance with: a) The cost of medical, surgical and hospital expenses, and the supply of medication and other therapeutic means of good quality and in the amount required by the crewmember," and b) the cost of food and accommodation while

receiving the aforementioned medical treatment."

173.  MSC CRUISES and FANTASIA CRUISE LTD., failed and/or arbitrarily refused to comply with their legal obligations under the articles stated above, and Law Decree No. 8, Articles 86 and 87, by refusing to provide for Plaintiff's medical treatment and the cost of food and accommodations as set forth above.

174.  Plaintiff is entitled to receive medical assistance including hospitalization, sick pay, and the necessary costs to pay for food and lodging for as long as such assistance is required because he is not yet recovered from his injury.

175.  MSC CRUISES and FANTASIA CRUISE LTD., breached their obligations to pay for Plaintiff's medical care and the necessary costs to pay for food and lodging.

176.  MSC CRUISES and FANTASIA CRUISE LTD. breached their duty to provide Plaintiff with medical assistance, sick pay, and the necessary costs to pay for feeding and lodging which is unreasonable, willful, and in callous disregard for Plaintiff's rights.

177.  MSC CRUISES and FANTASIA CRUISE LTD. are obligated to ensure that Plaintiff receives medical care and costs for food and lodging as a result of his injuries and/or ailments he incurred during his employment with Defendants aboard the MSC CRUISES, S.A.'s cruise ship.

178.  MSC CRUISES and FANTASIA CRUISE LTD. failed to satisfy their obligations to Plaintiff.

179.  As a direct and proximate result of Defendants, MSC CRUISES and FANTASIA CRUISE LTD.'s breach of duty, Plaintiff sustained additional pain, suffering, physical disability, emotional distress, mental duress, loss of the capacity to enjoy life, lost wages, the loss of the ability to earn wages, and the costs of medical care and nursing care and other damages recognized

at law.

180.   The compensation tables in Resolution J.D. No. 017/2005 assign value to each injury sustained due to the impossibility to carry out certain functions.

181.   Plaintiff sustained bodily injury as a result of a work accident while he worked for the shipowner, master, and/or employer aboard the Defendant's cruise ships.

182.   Plaintiff's bodily injuries were the result of occupational accidents, which occurred while he was working aboard the Defendant's cruise ships.

183.   Pursuant to the Maritime Authority of Panama Resolution J.D. No. 017/2005, Plaintiff is entitled to compensation for the bodily injuries he sustained while performing services for the shipowner, master, and/or employer aboard the Defendants cruise ship.

184.   Plaintiff is entitled to recover an amount equal to his annual salary multiplied by the percentage value assigned to each injury up to $50,000.00.

185.   Per Plaintiff's medical evidence, he will be completely disabled from further maritime work due to knee, lower back and neck conditions caused or aggravated by Defendant's negligence. Therefore, he is entitled to the full $50,000 benefit under Resolution J.D. No. 017/2005.

WHEREFORE, Plaintiff seeks judgment in the amount of US $50,000 plus pre- judgment interest, attorney's fees, and costs; and requests a trial on all issues so triable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all claims so triable by right.

Respectfully submitted this 24th day of October , 2025.

**BILLERA LAW**
*Attorneys For Plaintiff*
2201 N.W. Corporate Blvd. Suite 200
Boca Raton, FL 33431
T: (561) 500-7777
F: (561) 500-7778
Primary Email: John@Billeralaw.com
Secondary Email: Nigina@Billeralaw.com
Third Email: filing@billeralaw.com
Fourth Email: lenika@billeralaw.com
By:      **/S/ JOHN F. BILLERA**
         JOHN F. BILLERA, ESQ.
         Florida Bar No.: 869041