IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE  NO.: 0:25-cv-62709-WPD

CAROLOS HUMBERTO PEREZ PAGOAGA,

Claimant,

v.

MSC CRUISES, S.A. and FANTASIA
CRUISE LTD,

Defendant.

_____/

## MSC CRUISES S.A.'S MOTION TO DISMISS AND COMPEL ARBITRATION

MSC Cruises S.A., by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(3), and Fed. R. Civ. P. 12(b)(6), hereby move to dismiss Claimant's Complaint and compel arbitration, and as grounds therefore state as follows:

## INTRODUCTION

Fed. R. Civ. P. 1 provides that every party is entitled to the "just, speedy, and inexpensive determination of every action and proceeding."

Claimant executed a valid Seafarer Employment Contract and Collective Bargaining Agreement in accordance with *Wilson v. Carnival Corp.*, 2022 WL 17250521 (S.D. Fla., 2022), aff'd, 2024 WL 1460160 (11th Cir. 2024) and *Cvoro v. Carnival Corp.*, 2018 WL 1660669 (S.D. Fla. 2018), aff'd, 941 F.3d 487 (11th Cir. 2019).  Per Paragraph 8 of Article 31 of Claimant's Collective Bargaining Agreements all "Jones Act claims, claims for damages for personal injury, wrongful death, negligence, unseaworthiness, failure to provide prompt proper and adequate medical care, or maintenance and cure, weather based in tort or contract under the laws of any nation or jurisdiction shall be arbitrated in accordance with the terms and conditions of this Agreement" in London. *Claimant's Seafarer Employment Contract and Collective Bargaining Agreement,* **attached as Composite Exhibit 1**. Because the Claims found in Claimant's Complaint can only be heard and resolved in arbitration in London as outlined by Claimant's valid Seafarer Employment Contract and Collective Bargaining Agreement, this Court lacks subject matter

jurisdiction per Fed. R. Civ. P. 12(b)(1), this Court is an improper venue per Fed. R. Civ. P. 12(b)(3), and Claimant has failed to state any claims upon which relief can be granted by this Court, per Fed. R. Civ. P. 12(b)(6).

Claimant alleges that beginning on October 24, 2024, while in the service of the *MSC Fantasia,* he allegedly suffered from personal injuries. [D.E. 1-2]. In accordance with Claimant's Collective Bargaining Agreement, however, Claimant's Claims are subject to mandatory arbitration in London. *Exhibit 1, Paragraphs 8*. In accordance with Claimant's Collective Bargaining Agreement, Claimant already Submitted a Notice of Arbitration onto MSC Cruise Management (UK) Ltd., and MSC Malta Seafarers Company Limited. *See Claimant's Notice of Arbitration,* **attached as Exhibit 2**. Claimant's strategy of simultaneously initiating the arbitration process in London against MSC Cruise Management (UK) Ltd., and MSC Malta Seafarers Company Limited, and filing suit against MSC Cruises S.A., in Florida given his Collective Bargaining Agreement, is not only a waste of juridical recourses, but is neither "just, speedy, [nor] inexpensive." Fed. R. Civ. P. 1.  It should be noted Claimant's Counsel embarked on a similar expedition in *Anderson v. MSC Cruises*, S.A., 2025 WL 915980, at \*8-\*9 (S.D. Fla. 2025), *report and recommendation adopted*, 2025 WL 957194 (S.D. Fla. 2025) and *Dwayne Anthony Nelson Wilson v. MSC Cruises S.A.*, CASE NO. 25-61238-CIV-SMITH, **attached as Exhibit 3**,  and was required to arbitrate by the Southern District.

## I. <u>Motion to Dismiss Standard</u>

Under Fed. R. Civ. P. 8(a)(2), Claimant must allege a breach of duty by providing a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  While "detailed factual allegations" are not required, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. At a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  According to the Eleventh Circuit, this pleading standard requires that a plaintiff allege enough facts "that will 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093-1094 (11th Cir. 2022) (citing *Twombly*, 550 U.S. at 570). *See also Newbauer v. Carnival Corp.*, 26 F.4th 931 (11th Cir. 2022) (Cert. Denied). The Eleventh Circuit, relying on *Twombly* and *Iqbal* has ruled that mere "threadbare recitals of the elements of a cause of action" and "conclusory statements" are insufficient. *Id*. As the Supreme Court explained in *Iqbal,* pleadings

alleging that a defendant "knew of, condoned, and willfully and maliciously [acted]," amount to "formulaic recitations of the elements." *Iqbal*, 556 U.S. at 680-681.

## II.    Claimant's Claims Must Be Arbitrated

The enforcement of international arbitration clauses found in seafarer employment agreements is favored in the Eleventh Circuit. *Wilson,* 2022 WL 17250521; *Wilson,* 2024 WL 1460160; *Cvoro,* 2018 WL 1660669; *Cvoro,* 941 F.3d 487. In *Cvoro,* a seafarer employed by Carnival sought to have a foreign arbitration award issued in Carnival's favor vacated and to pursue remedies under 46 U.S.C. 30104 in the Southern District of Florida. *Cvoro,* 941 F.3d at 493-494. *See also Cvoro,* 2018 WL 1660669. The Eleventh Circuit, however, noted that Cvoro's seafarers' employment agreement contained the following arbitration and choice of law clauses:

> As a condition of her employment, Cvoro agreed to resolve all legal disputes with Carnival by arbitration. Specifically, Cvoro's seafarer's agreement contains mandatory arbitration and forum selection clauses, which provide that "[t]he place of arbitration shall be London, England, Monaco, Panama City, Panama or Manila, Philippines whichever is closer to the Seafarer's home country." Her seafarer's agreement also contains a choice of law clause designating the governing law for disputes as the laws of the flag of the cruise ship on which Cvoro was assigned.

*Id.* at 490-491.

To reach their decision in *Cvoro,* the Eleventh Circuit analyzed the validity of mandatory arbitration clauses found in seafarer employment agreements through the lens of precedent set by the Supreme Court and the Eleventh Circuit. *Id*. at 496-504. In doing so the Eleventh Circuit determined that:

> Courts should apply a strong presumption in favor of enforcement of arbitration and choice clauses; (2) U.S. statutory claims are arbitrable, unless Congress has specifically legislated otherwise; (3) choice of law clauses may be enforced even if the substantive law applied in arbitration potentially provides reduced remedies (or fewer defenses) than those available under U.S. law; and (4) even if a contract expressly says that foreign law governs . . . courts should not invalidate an arbitration agreement at the arbitration enforcement stage on the basis of speculation about what the arbitrator will do, as there will be a later opportunity to review any arbitral award.

*Id.* at 498 (citing *Lindo v. NCL (Bahamas) Ltd*., 652 F.3d 1257, 1265-1269 (11th Cir. 2011)). *See also The Bremen v. Zapata OffShore Co*., 407 U.S. 1, 92 S. Ct. 1907 (1972), *and The Scherk v. AlbertoC v. Soler ChryslerPlymouth*, 473 U.S. 614, 105 S. Ct. 3346 (1985).

Affirming the Southern District's dismissal of Cvoro's cause of action, the Eleventh Circuit explained that:

> [D]espite Cvoro's status as a ward of admiralty, she has not established that the foreign arbitral award in this case offends the United States' "most basic notions of morality and justice." We therefore conclude that the district court did not err in denying Cvoro's request that it refuse to enforce the arbitral award and dismissing her claims brought under the Jones Act and general maritime law.

*Id*. at 504.

In *Wilson*, another seafarer employed by Carnival also sought to have a foreign arbitration award issued in Carnival's favor vacated and to pursue remedies under 46 U.S.C. 30104 in the Southern District of Florida. *Wilson,* 2022 WL 17250521 at *1-*2. In dismissing the plaintiff's work-related claims for failure to state a claim upon which relief could be granted in accordance with Fed. R. Civ. P. 12(b)(6), the Southern District explained that:

> [I]t is readily apparent that all these claims fall within the scope of this clause such that they may not be heard by this Court. That is particularly evident in the case of the negligence and unseaworthiness claims, the substance of which the Petitioner already arbitrated. It makes no difference that the Petitioner asserts those two claims under the Jones Act. *Cvoro v. Carnival Corp.*, 941 F.3d 487, 495 (11th Cir. 2019) ("choice-of-law clauses may be enforced even if the substantive law applied in arbitration potentially provides reduced remedies (or fewer defenses) than those available under U.S. law.") (cleaned up) (quoting *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1265-69 (11th Cir. 2011)).

*Id*. at*1-2; *4. In affirming *Wilson*, the Eleventh Circuit explained that:

> It is well settled that agreements to arbitrate will be enforced notwithstanding the contractual relinquishment of the right of access to courts. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1371 (11th Cir. 2005). By entering into a valid employment contract with an arbitration agreement, Wilson voluntarily agreed to resolve his claims before an arbitral forum, limiting his right of access to courts.

*Wilson*, 2024 WL 1460160 at *1.

### a. MSC Cruises S.A., Is Expressly Covered Under Claimant's Collective Bargaining Agreement and Can Compel Arbitration

On October 9, 2024, Claimant executed a valid Seafarer's Employment Contract containing the following Collective Bargaining Agreement that required:

> Grievances and disputes which remain unresolved after a sixty (60) day period, must be referred to arbitration to the exclusion of any other legal

or court proceeding as set forth in this Agreement. **It is further agreed that any and all claims from a Seafarer against the Company, Company's parent, subsidiary and sister entities, Company's vessels or the** <u>operators of such vessels</u>, Seafarer's Employer, and/or any officers, staff or crew of any of the Company's vessels, including, but not limited to, Jones Act claims, claims for damages for personal injury, wrongful death, negligence, unseaworthiness, failure to provide prompt proper and adequate medical care, or maintenance and cure, whether based in tort or contract or under the laws of any nation or jurisdiction, shall be arbitrated in accordance with the terms and conditions in this Agreement. The seafarer and Union acknowledge that they knowingly and voluntarily waive any right they have to a jury trial. The arbitration referred to in this Article is exclusive and mandatory. No dispute may be joined with another lawsuit or in an arbitration with a dispute of another person, or resolved on a class-wide basis and each Seafarer waives any right to bring or participate in any class action, group action, collective action, or other similar litigation against the Company.

*Exhibit 1, Article 31(8) of Claimant's Collective Bargaining Agreement.* (emphasis added).

In *Cakarevic v. Royal Caribbean Cruises*, LTD, 2023 U.S. Dist. LEXIS 103672, at *2-*4 (S.D. Fla. 2023), the claimant, employed by Pullmantur Ship Management, filed an action against Royal Caribbean, the vessel's Owner, in Florida state court seeking Jones Act remedies. *Cakarevic*, 2023 U.S. Dist. LEXIS 103672 at *2-4. Although the claimant did not execute a Seafarers Employment Agreement with Royal Caribbean, the claimant executed the following Seafarers Employment Agreement with Pullmantur Ship Management containing the below arbitration clause:

All grievances and any other dispute whatsoever, whether in contract, regulatory, statutory, common law, tort or otherwise relating to or in any way "connected with the Employee's service for the Owners/Company under the present Agreement, including but not limited to claims for personal injury/disability or death, no matter how described, pleaded, or styled, and **whether asserted against the Owners/Company, Master, Employer, <u>Ship Owner, vessel or vessel operator</u> shall be referred to and resolved exclusively by mandatory binding arbitration**[.]

*Id*. at *3-*4. (emphasis added).

Recognizing that "[t]he plain terms of Cakarevic's employment agreement with Pullmantur cover his claims against Royal Caribbean," the Southern District explained that:

> The plain terms of Cakarevic's employment agreement with Pullmantur cover his claims against Royal Caribbean. The arbitration provision requires that "[**a]ll grievances and any other dispute whatsoever**, whether in contract, regulatory, statutory, common law, tort or otherwise **relating to or in any way 'connected with the Employee's service** for the Owners/Company under the present Agreement, including but not limited to **claims for personal injury/disability** or death, no matter how described, pleaded, or styled, and **whether asserted against the** Owners/Company, Master, Employer**, Ship Owner, vessel or vessel operator shall be referred to and resolved exclusively by mandatory binding arbitration . . . .**" (Mot. Dismiss Ex. 2 ¶ 12(a) (emphasis added).) The arbitration provision contemplates that maritime law claims will be arbitrated. And it contemplates that claims against the shipowner will be arbitrated. This language is simple, clear, and straightforward.

*Id*. at *7-*8 (emphasis original).

In this lawsuit, Claimant alleges that MSC Cruises S.A., "was the owner pro ha vice and/or operator of the M/V MSC FANTASIA at the time of Plaintiff's employment on said vessel." [D.E. 1-2, Paragraph 13]. The Eleventh Circuit, guided by the Supreme Court, has repeatedly concluded that the mandatory arbitration and choice of law clauses found in seafarers' employment agreements are valid and enforceable. *Wilson*, 2024 WL 1460160; *Cvoro*, 941 F.3d at 496-504; *Lindo*, 652 F.3d at 1265-1269.  Like the arbitration clause analyzed by the Southern District in *Cakarevic* that extended to the "Owners/Company, Master, Employer, Ship Owner, vessel or vessel operator",  the subject arbitration clause at issue here also extends to the "Company, Company's parent, subsidiary and sister entities, Company's vessels or the operators of such vessels, Seafarer's Employer, and/or any officers, staff or crew of any of the Company's vessels." *Cakarevic*, 2023 U.S. Dist. LEXIS 103672 at *2-*4. *Exhibit 1, Article 31(8) of Claimants' Collective Bargaining Agreements.* Accordingly, the mandatory arbitration and choice of law clauses found in Claimant's Seafarers' Employment Contracts and Collective Bargaining Agreements are valid and enforceable by MSC Cruises S.A., as the "operator." *Wilson*, 2024 WL 1460160; *Cvoro*, 941 F.3d at 496-504; *Lindo*, 652 F.3d at 1265-1269; *Cakarevic*, 2023 U.S. Dist. LEXIS 103672 at *2-*4. [D.E. 1-2, Paragraph 13]. As such, all of Claimant's Claims must be arbitrated and Claimant's causes of action should be dismissed in accordance with Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(3), and Fed. R. Civ. P. 12(b)(6).

      **b. Alternatively, MSC Cruises S.A., Can Enforce Claimant's Collective Bargaining Agreement as a Non-Signatory as Claimant Alleged Substantially Interdependent and Concerted Misconduct**

In the alternative, MSC Cruises S.A., can similarly enforce Claimant's Collective Bargaining Agreement as a non-signatory because Claimant alleged substantially interdependent and concerted misconduct by the signatories and non-signatories under Federal Common Law. As the Southern District confirmed in *Anderson:*

> Under federal common law principles, non-signatories can compel arbitration in two circumstances: (1) "when the plaintiff-signatory must rely on the terms of the written agreement in asserting [its] claims," or (2) "when the plaintiff-signatory alleges substantially interdependent and concerted misconduct by the signatories and non-signatories, and such alleged misconduct is founded in or intimately connected with the obligations of the underlying agreement."

*Anderson*, 2025 WL 957194, at \*5-\*6. (citing *Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1119 (11th Cir. 2020)). *See also Anderson*, 2025 WL 915980 at \*8-\*9.

In *Anderson*, the claimant filed a five-count complaint against MSC Cruises S.A., in Florida state court alleging negligence under the Jones Act, unseaworthiness, tortious failure to provide maintenance and cure, failure to provide prompt, proper, and adequate medical care, and a disability claim. *Anderson*, 2025 WL 915980 at \*1, *report and recommendation adopted*, 2025 WL 957194. In *Anderson,* the claimant was hired by, and worked for, Espit Ventures PTE, LTD., onboard the *MSC Seaside*. *Id*. On the same day the claimant in *Anderson* filed his cause of action against MSC Cruises S.A., in Florida state court, the claimant also initiated arbitration in accordance with his employment agreement against Espit Ventures PTE, LTD. *Id*. In *Anderson*, Magistrate Judge Strauss noted that "Anderson's Statement of Claim for his arbitration against Espit contains nearly identical factual allegations as his Amended Complaint, though, at times, he attributes actions to Espit in his arbitration Statement of Claim that he attributes to MSC in his Amended Complaint." *Id*. at \*2. Concluding that MSC Cruises S.A., could compel arbitration as a non-signatory to the Espit Ventures PTE, LTD.'s Contract because the claimant in *Anderson* alleged "substantially interdependent and concerted misconduct," Magistrate Judge Strauss' Report and Recommendation explained that:

> Alternatively, at the very least, Anderson alleges "substantially interdependent and concerted misconduct" by the signatories (Espit) and non-signatories (MSC) and that misconduct is "founded on, or intimately connected with," the obligations of the Espit employment contract. ***That Anderson is alleging "substantially interdependent" misconduct is clear from his allegations, both here and in his arbitration proceedings against Espit. Anderson's allegations within his***

> ***Statement of Claim in the arbitration proceedings against Espit are identical to the ones he now alleges against MSC.*** *See* [DE 9–2].
>
> In the arbitration proceeding, Anderson alleges that "Espit failed to provide Claimant prompt, proper and adequate medical treatment aboard the vessel and/or shoreside; and Claimant thereby became injured, and his underlying medical conditions became aggravated." *Id.* ¶ 16. Here, Anderson alleges that "MSC and the vessel failed to provide [Anderson] prompt, proper and adequate medical treatment aboard the vessel and/or shoreside; and Plaintiff thereby became injured, and his underlying medical conditions became aggravated." [DE 5] ¶ 36. In both the arbitration proceeding and here, Anderson alleges that the *Seaside's* stairs "did not have adequate railings or hand holds; did not have adequate lighting; did not have adequate non-slip grip; had improper stair height; and/or otherwise did not conform to relevant industry standards for the safe design and construction of staircases." Compare [DE 9–3] ¶ 9, with [DE 5] ¶ 25. ***In other words, Anderson alleges the same misconduct against Espit and MSC, based on the same circumstances, causing the same incident, and leading to the same injuries. Thus, the alleged misconduct of the signatory and non-signatory is clearly interdependent.***
>
> Further, for the same reasons that Anderson appears to "rely" on the contract, the misconduct that he alleges is "founded on, or intimately connected with," the obligations of the Espit contract. In addition to the Espit contract establishing Anderson's seaman status and his very reason for being on the *Seaside* to begin with, the contract's medical care provision states that "the Salesperson shall be entitled to regular and reasonable onboard medical care by the Ship's doctor as well as medicine for illness and injury suffered while aboard the Ship in a manner similar to services afforded to the crew of the Ship." [DE 9–3] at 10. ***Anderson's entire lawsuit stems from his fall onboard the Seaside and the alleged failure to provide the adequate medical care promised by that provision.*** *See* [DE 1] ¶ 39 (alleging MSC failed to "provide [Anderson] with prompt, proper, and adequate medical care when he sought medical attention for his medical conditions and related injuries"). Therefore, Anderson is alleging "substantially interdependent and concerted misconduct" by Espit and MSC (i.e., *the failure to provide adequate medical care and a safe working environment aboard the Seaside*) and that alleged misconduct is intimately connected with the Espit employment contract. Consequently, equitable estoppel dictates that MSC may compel arbitration even as a non-signatory.

*Id.* at *8-*9. (emphasis added).

In adopting the court's Report and Recommendation, the Southern District explained that:

> Mr. Anderson offers other arguments that are more viable, but the Court nonetheless determines that the conditions needed for MSC to compel arbitration are sufficiently present. In this case, Mr. Anderson's Statement of Claim for the

> Panama arbitration is nearly identical to the factual allegations in his Amended Complaint. *See* (DE [5]; [9-2]). And though Mr. Anderson does not jointly accuse MSC and Espit of collusion, he pleads allegations that lay bare the tangled nature of each entities' services and obligations. For example, Mr. Anderson alleges that MSC's crew supervised his work, supplied his "tools, equipment, clothing, shoes, supplies, and food," and directed his medical treatment. (DE [5] at ¶ 17-20). Yet, under the contract, Espit was supposed to be responsible for these areas. Mr. Anderson even alludes to the unclear boundaries created by this arrangement—that despite entering into a contract with Espit, he "acquiesced to" working under MSC's supervision. *Id.* at ¶ 12, 16. As Judge Strauss considered in the R&R, this all "[belies] the idea, seemingly implied by Anderson's allegations, that MSC provided these services simply because Anderson appeared on the Seaside or as MSC's borrowed employee." (DE [30] at p. 14). When considering the Espit contract even specifies that Mr. Anderson will work on MSC's Seaside, the Court must conclude that MSC and Espit's alleged conduct is sufficiently interrelated for these purposes—and linked to the obligations of Mr. Anderson's contract with Espit. These facts would be sufficient to meet the standards to enforce arbitration as a non-signatory in other circuits, *see J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile*, S.A., 863 F.2d 315 (4th Cir. 1988), and are also adequate here. As such, the Court agrees with Judge Strauss's ultimate conclusion: equitable estoppel "dictates that MSC may compel arbitration even as a non-signatory." (DE [30] at p. 16).

*Anderson,* 2025 WL 957194 at *6.

In *Dwayne Anthony Nelson Wilson v. MSC Cruises S.A.*, the claimant similarly executed a Seafarer Employment Contract and Collective Bargaining Agreement with MSC Cruise Management (UK) Ltd., and MSC Malta Seafarers Company Limited containing the same arbitration clause requiring that all "'Jones Act claims, claims for damages for personal injury, wrongful death, negligence, unseaworthiness, failure to provide prompt proper and adequate medical care, or maintenance and cure, weather based in tort or contract under the laws of any nation or jurisdiction shall be arbitrated in accordance with the terms and conditions of [the]Agreement' in London." *Exhibit 3, Page 1*. In *Dwayne Anthony Nelson Wilson*, the claimant similarly filed a Complaint and Demand for Jury Trial in the Circuit Court of the 17th Judicial Circuit in and For Broward County, Florida against MSC Cruises S.A., and commenced arbitration proceedings in London against MSC Cruise Management (UK) Ltd., and MSC Malta Seafarers Company Limited. *Exhibit 3, Page 2*. In recognizing that *Dwayne Anthony Nelson Wilson* was required to arbitrate his claims against MSC Cruises S.A., the Southern District explained:

> Here, Mr. Wilson alleges substantially interdependent and concerted misconduct by MSC Defendants and that their misconduct is intimately connected with the Plaintiff's employment contract with Seafarers and Limited. For instance, Mr.

Wilson's Statement of Claim for the London arbitration is nearly identical to the factual allegations in his Complaint. And though Mr. Wilson does not jointly accuse MSC Defendants of collusion, he pleads allegations that lay bare the tangled nature of each entities' services and obligations. For example, Mr. Wilson alleges that MSC had the duty to provide a seaworthy vessel, to provide prompt, proper, and adequate medical care, and to provide safety and security of the ship and its personnel. (DE1-2, ¶¶ 5, 82.) Yet, under the CBA, Seafarer and Limited were supposed to be responsible for these areas. (DE 4-1.) Mr. Wilson even alludes to the unclear boundaries created by this arrangement—that despite entering into a contract with Seafarers, he "acquiesced" to performing utility duties for MSC and Limited. (DE1-2, ¶¶ 23-36.) As such, the Court finds that equitable estoppel "dictates that MSC may compel arbitration even as a non-signatory. *See e.g. Anderson v. MSC Cruises, S.A.*, No. 24-60715-CIV, 2025 WL 957194, at *6 (S.D. Fla. Mar. 31, 2025).

*Exhibit 3, Page 3.*

As demonstrated by Claimant's Complaint and Notice of Arbitration, his Claim's against the signatories and non-signatory MSC Cruises S.A., are one and the same. *Anderson*, 2025 WL 915980 at *8-*9, *report and recommendation adopted*, 2025 WL 957194 and *Exhibit 3, Page 3. Exhibit 2, Paragraphs 4-11.* [ D.E. 1-2, Paragraphs 69(a-y); 75(a-k); 116(a-p)]. Like *Anderson* and *Dwayne Anthony Nelson Wilson*, Claimant "alleges the same misconduct against" non-signatory MSC Cruises S.A., and signatories MSC Cruise Management (UK) Ltd., and MSC Malta Seafarers Company Limited "based on the same circumstances, causing the same incident, and leading to the same injuries." *Anderson*, 2025 WL 915980 at *8-*9, *report and recommendation adopted*, 2025 WL 957194 and *Exhibit 3, Page 3. Exhibit 3, Page 3. Exhibit 2, Paragraphs 4-11.* [ D.E. 1-2, Paragraphs 69(a-y); 75(a-k); 116(a-p)]. Like *Dwayne Anthony Nelson Wilson,* Claimant "even alludes to the unclear boundaries created by this arrangement—that despite entering into a contract with Seafarers, he 'acquiesced' to performing utility duties for MSC and Limited." *Exhibit 3, Page 3.* [ D.E. 1-2, Paragraphs 18-31].  As demonstrated above, and by Claimant's Pleadings, his claims against non-signatory MSC Cruises S.A., essentially arise from the alleged "failure" of MSC Cruise Management (UK) Ltd., and MSC Malta Seafarers Company Limited to uphold [their] contractual duties. [D.E. 1-2]. *Exhibit 2.*  Because Claimant's claims against non-signatory MSC Cruises S.A., "arise out of the same factual allegations of concerted conduct by both" non-signatory MSC Cruises S.A., and signatories MSC Cruise Management (UK) Ltd., and MSC Malta Seafarers Company Limited, equitable estoppel is warranted.  *Anderson*, 2025 WL 915980 at *8-*9, *report and recommendation adopted*, 2025 WL 957194 and *Exhibit 3, Page 3.* Therefore, all

of Claimant's claims must be arbitrated and Claimant's causes of action should be dismissed in accordance with Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(3), and Fed. R. Civ. P. 12(b)(6).

### c. Alternatively, MSC Cruises S.A., Can Enforce Claimant's Collective Bargaining Agreement as a Third-Party Beneficiary

In the alternative, MSC Cruises S.A., can similarly enforce Claimant's Collective Bargaining Agreement as a non-signatory because MSC Cruises S.A., is a third-party beneficiary. *Various Insurers v. GE Int'l, Inc.,* 131 F.4th 1273, 1277-1280 (11th Cir. 2025). As the Eleventh Circuit explained in *GE Int'l, Inc.,* "[i]t is well-established that the parties to a contract may create rights in a third-party beneficiary by manifesting an intention to do so." *Id*. at 1277. "The 'test under federal common law for third-party beneficiary status is whether the contract reflects the express or implied intention of the parties to benefit the third party.'" (quoting *Hencely v. Fluor Corp.*, 120 F.4th 412, 431 (4th Cir. 2024)). As the Eleventh Circuit explained in *GE Int'l, Inc.,* "One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him." *Id*. "In evaluating the intentions of the parties to a contract, 'a court may look beyond the contract to the circumstances surrounding its formation.'" *Id*. (quoting Beverly v. Macy, 702 F.2d 931 (11th Cir. 1983).

As drafted, the arbitration clause memorialized the express intention of Parties to benefit MSC Cruise S.A., as it extends to the "Company, Company's parent, subsidiary and sister entities, Company's vessels or the operators of such vessels, Seafarer's Employer, and/or any officers, staff or crew of any of the Company's vessels." *Exhibit 1, Article 31(8) of Claimant's Collective Bargaining Agreement.* Nevertheless, given the "direct reference" of an "explicit right" by the "the operators of such vessels" to compel arbitration MSC Cruises S.A., would be "reasonable in relying on the [Collective Bargaining Agreement] as manifesting an intention to confer a right on [it]" as an Operator of the *MSC Fantasia*. *Id*. at *Id*. at 1277-1280. This makes sense. Absent the execution of his Seafarer Employment Contract and Collective Bargaining Agreement, Plaintiff would not have sailed onboard the *MSC Fantasia* vessel operated by MSC Cruises S.A. Absent the execution of his Seafarer Employment Contract and Collective Bargaining Agreement, Plaintiff would not have been a seafarer able to call upon remedies only available to seafarers. Plaintiff's status and rights as a seafarer is predicated upon the execution of his Seafarer Employment Contract and Collective Bargaining Agreement. Given the current litigation strategy employed by Claimant's Counsel and others in the field, as demonstrated in *Anderson* and *Dwayne*

*Anthony Nelson Wilson*, MSC Cruises S.A., would not have allowed Claimant to board the respective vessel had it not believed it was covered by the arbitration clause because simultaneously initiating the arbitration process in London against MSC Cruise Management (UK) Ltd., and MSC Malta Seafarers Company Limited, and filing suit against MSC Cruises S.A., is not only a waste of juridical recourses, but is neither "just, speedy, [nor] inexpensive" for MSC Cruises S.A., MSC Cruise Management (UK) Ltd., and MSC Malta Seafarers Company Limited. *Id*.

**WHEREFORE**, For the reasons set forth herein, MSC Cruises S.A., respectfully requests that this Honorable Court grant this Motion to Dismiss Claimant's Complaint and issue an order compelling arbitration.

Dated: December 31, 2025
Miami, Florida

Respectfully submitted,
MALTZMAN & PARTNERS, P.A.

By:    */s/ Mathew C. Renik*
      Jeffrey B. Maltzman, Esq.
      Florida Bar No. 48860
      jeffreym@maltzmanpartners.com
      Steve Holman, Esq.
      Florida Bar No. 547840
      steve@maltzmanpartners.com
      Mathew C. Renik, Esq.
      Florida Bar No. 1038908
      mattr@maltzmanpartners.com
      55 Miracle Mile, Suite 300
      Coral Gables, FL  33134
      Tel: 305-779-5665
      Fax: 305-779-5664
      *Attorneys for MSC Cruises S.A.*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on this 31st day of December 2025.  I also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

By: /s/ *Mathew C. Renik*
Mathew C. Renik, Esq.
Florida Bar No. 1038908

### SERVICE LIST
### CASE NO.: 0:25-CV-62709-WPD

| John F. Billera, Esq.<br>john@billeralaw.com<br>2201 N.W. Corporate Blvd., Suite 200<br>Boca Raton, Florida 33431<br>Phone: 561-500-7777<br>Fax: 561-500-7778<br>*Attorney for Claimant* | Jeffrey B. Maltzman, Esq.<br>jeffreym@maltzmanpartners.com<br>Steve Holman, Esq.<br>steveh@maltzmanpartners.com<br>Mathew C. Renik, Esq.<br>mattr@maltzmanpartners.com<br>MALTZMAN & PARTNERS, P.A.<br>55 Miracle Mile, Suite 300<br>Coral Gables, FL  33134<br>Phone: 305-779-5665 /Fax: 305-779-5664<br>*Attorneys for MSC Cruises S.A.* |