UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 25-62709-CIV-DIMITROULEAS/HUNT

CARLOS HUMBERTO PEREZ PAGOAGA,

Plaintiff,

vs.

MSC CRUISES, S.A.,
and FANTASIA CRUISE LTD.,

Defendants.
_______________________________________/

**REPORT AND RECOMMENDATIONS**

THIS CAUSE is before this Court on Defendant MSC Cruises, S.A.'s Motion to Dismiss and Compel Arbitration. ECF No. 3. The Honorable William P. Dimitrouleas, United States District Judge, referred this Motion to the undersigned for disposition or report and recommendation. ECF No. 8; *see also* 28 U.S.C. § 636(b); S.D. Fla. Mag. R. 1. Having carefully reviewed the Motion, Response, Reply, applicable law, and being otherwise fully advised in the premises, the undersigned respectfully RECOMMENDS that the Motion be GRANTED IN PART and DENIED IN PART for the reasons below.

**BACKGROUND**

This is a maritime negligence suit arising out of injuries sustained by Plaintiff Carlos Humberto Perez Pagoaga ("Plaintiff") while he worked as a seaman aboard the MSC Fantasia, which is a cruise ship owned and operated by Defendant MSC Cruises, S.A. ("Defendant").[1] ECF No. 1-2. Plaintiff is a citizen of Honduras. ECF No. 6 at 3.

---

[1] The Motion concerns only MSC Cruises, S.A. The Complaint also names Fantasia Cruise Ltd. as a defendant. ECF No. 1-2. Fantasia Cruise Ltd. is alleged to be an

Defendant is a foreign corporation headquartered in Switzerland. ECF No. 1-2 at 2. MSC Fantasia flies the flag of Panama. ECF No. 1 at 1.

Plaintiff alleges that he was hired by MSC Malta Seafarers Co. Ltd. ("MSC Malta").[2] ECF No. 1-2 at 5. MSC Malta "was Plaintiff's nominal employer under his Employment Agreement." *Id.* But after Plaintiff began working as a Bar Boy on the MSC Fantasia, "it was agreed and clear that Plaintiff was working for [Defendant] under [Defendant's] supervisor and assisting [Defendant]." *Id.* Plaintiff alleges that "one hundred percent of Plaintiff's work on the [MSC Fantasia] was under the control, supervision, and direction of [Defendant]." *Id.* at 6. Thus, at all times, Defendant was "Plaintiff's maritime employer and/or borrowing employer." *Id.* at 2.

In October 2024, while Plaintiff was aboard the MSC Fantasia, Plaintiff fell from a top bunk bed. *Id.* at 9. The bunk bed allegedly lacked adequate railing, hand holds, lighting, non-slip grips on its ladder steps, and otherwise failed to conform to industry safety standards. *Id.* Plaintiff felt pain in his left arm, left knee, back, and neck. *Id.* He reported the injuries to the ship medical center, was prescribed pain relievers, and was declared fit for duty. *Id.* at 10. About one month later, Defendant tasked Plaintiff with lifting and carrying heavy boxes of fruit. *Id.* During the lift, Plainitff felt pain in his left hand. *Id.* He reported the injury. *Id.* Plaintiff was ultimately diagnosed and treated for various maladies, including a dislocated thumb and an injured knee. *Id.* Despite some

"alternative" owner and operator of MSC Fantasia. *Id.* at 2. Fantasia Cruise Ltd. has not appeared in this action, and Defendant represents that "[s]ervice has not been rendered onto Fantasia Cruises Ltd." ECF No. 1 at 2.

[2] There are three MSC entities in the pleadings: (1) Defendant MSC Cruises, S.A.; (2) non-party MSC Cruise Management (UK), Limited ("MSC UK"); and (3) non-party MSC Malta Seafarers Company Limited ("MSC Malta").

treatment, Plaintiff alleges he remains in pain and is unable to perform daily activities. *Id.* at 11.

Based on the foregoing, Plaintiff sued Defendant in state court, alleging general maritime law negligence; unseaworthiness; failure to provide maintenance and cure; and failure to provide prompt, proper, and adequate medical care. *Id.* at 12–30. Pleading in the alternative, in the event that U.S. general maritime law does not apply, Plaintiff also alleges claims of negligence and breach of contract under Panamanian law. *Id.* at 30–38. Defendant removed the case to federal court pursuant to 9 U.S.C. § 205 because this case "is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958." ECF No. 1 at 2.

Now, Defendant moves to compel arbitration of Plaintiff's claims and dismiss this suit. ECF No. 3. Defendant attached two documentary exhibits to its Motion: (1) a composite exhibit of an employment contract and a collective bargaining agreement, ECF No. 3-1, and (2) Plaintiff's notice of arbitration, ECF No. 3-2. The employment contract states, in relevant part, "[t]he current ITF Collective Agreement (CBA) shall be incorporated into and to form part of the contract."[3] ECF No. 3-1 at 2. In turn, the referenced CBA contains the following arbitration provision, which Defendant relies on to compel arbitration:

> Grievances and disputes which remain unresolved after a sixty (60) day period, must be referred to arbitration to the exclusion of any other legal or court proceeding as set forth in this Agreement. It is further agreed that any and all claims from a Seafarer against the Company, Company's parent, subsidiary and sister entities, Company's vessels or the operators of such vessels, Seafarer's Employer, and/or any officers, staff or crew of any of the Company's vessels, including, but not limited to, Jones Act claims, claims for damages for personal injury, wrongful death, negligence,

[3] ITF stands for International Transportation Workers Federation. ECF No. 14-1 at 3.

> unseaworthiness, failure to provide prompt proper and adequate medical care, or maintenance and cure, whether based in tort or contract or under the laws of any nation or jurisdiction, shall be arbitrated in accordance with the terms and conditions in this Agreement. The seafarer and Union acknowledge that they knowingly and voluntarily waive any right they have to a jury trial. The arbitration referred to in this Article is exclusive and mandatory. No dispute may be joined with another lawsuit or in an arbitration with a dispute of another person, or resolved on a class-wide basis and each Seafarer waives any right to bring or participate in any class action, group action, collective action, or other similar litigation against the Company.

*Id.* at 20.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, establishes a federal "policy favoring arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). The FAA implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. §§ 201–208. The Convention "requires courts of signatory nations, such as the United States, to give effect to private arbitration agreements and to enforce arbitral awards made in signatory nations." *Gonzalez v. Carnival Corp.*, 757 F. Supp. 3d 1314, 1319 (S.D. Fla. 2024). It "generally establishes a strong presumption in favor of arbitration of international commercial disputes." *Id.* (quoting *Trifonov v. MSC Mediterranean Shipping Co. SA*, 590 F. App'x 842, 843 (11th Cir. 2014)).

In deciding a motion to compel arbitration under the Convention, a district court conducts "a very limited inquiry." *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) (cleaned up). An arbitration agreement falls under the purview of the Convention if it meets four jurisdictional prerequisites: "(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a

signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *Id.* at 1294 n.7. "A district court must order arbitration unless (1) the four jurisdictional prerequisites are not met, or (2) one of the Convention's affirmative defenses applies." *Id.* at 1294–95 (citations omitted). "The party seeking to compel arbitration . . . bears the burden of proving each of these jurisdictional prerequisites." *Singh v. Carnival Corp.*, 550 F. App'x 683, 685 (11th Cir. 2013) (citing *Lindo v. NCL (Bahamas), Ltd.,* 652 F.3d 1257 (11th Cir. 2011)).

"[W]hen courts are faced with both a motion to dismiss for failure to state a claim and a motion to compel arbitration, it is required that the court first address the motion to compel arbitration." *McMasters v. Rest. Brands Int'l, Inc.*, No. 2:20CV791, 2021 WL 11728156, at *1 (W.D. Pa. Aug. 25, 2021), *aff'd,* No. 23-2764, 2025 WL 3206675 (3d Cir. Nov. 17, 2025). In doing so, the Court will "consider the facts in the light most favorable to the Plaintiff[]." *Vivas v. Safra Nat'l Bank of New York*, No. 10-21811-CIV-GOLD, 2010 WL 11602462, at *1 n.1 (S.D. Fla. Nov. 8, 2010).

When deciding whether an arbitration agreement exists, "a summary judgment-like standard is appropriate." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016).[4] "[A] district court may conclude as a matter of law that parties

[4] Defendant argues that the "summary-judgment like standard" is inapplicable after *Reiterman v. Abid*, 26 F.4th 1226, 1233 (11th Cir. 2022). ECF No. 7 at 2. In *Reiterman*, the Eleventh Circuit explained that district courts have the "option" of "deciding whether an arbitration agreement exists as a matter of law using a summary judgment-like standard," as opposed to a trial or an evidentiary hearing. 26 F.4th at 1233. Here, neither party requested a hearing or trial on the question of whether an agreement to arbitrate

did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Id.* (quoting Fed. R. Civ. P. 56(a)). "A dispute is not genuine if it is unsupported by the evidence or is created by evidence that is merely colorable or not significantly probative." *Id.* (cleaned up). A motion to compel arbitration is treated as a Rule 12(b)(1) challenge for lack of subject-matter jurisdiction, so "the Court may consider matters outside the four corners of the Complaint." *Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1228 (S.D. Fla. 2020).

## DISCUSSION

Plaintiff opposes the Motion on multiple grounds. ECF No. 6. First, Plaintiff challenges the authenticity of the CBA. *Id.* at 4. Second, Plaintiff argues that Defendant failed to satisfy the first jurisdictional prerequisite under the Convention because Defendant is not a signatory to the employment contract. *Id.* at 9–12. Third, Plaintiff raises affirmative defenses against enforcement. *Id.* at 18–21.

### 1. Authenticity of the CBA

As an initial matter, Plaintiff disputes the authenticity of the CBA attached to the Motion. ECF No. 6 at 4 ("MSC produced a single additional document . . . which is not referenced or otherwise incorporated into the Seafarer's Employment Contract and which MSC has not authenticated."). The undersigned directed the parties to submit supplemental briefing on this issue. ECF No. 12.

---

exists. As explained *infra*, there is no genuine dispute as to any material fact concerning the contract formation, so the undersigned opts to apply the *Bazemore* standard.

Generally speaking, "[t]he Federal Rules of Evidence require that evidence presented to the court be authenticated." *Bury v. Marietta Dodge*, 692 F.2d 1335, 1337 (11th Cir. 1982). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The "authentication burden" is "a light one." *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1267 (11th Cir. 2015).

**a. The Employment Contract Incorporates the CBA**

Plaintiff does not challenge the authenticity or formation of the employment contract signed with MSC Malta. He admits to signing it, *see* ECF No. 15 at 2–3, and Plaintiff's own Complaint references the "Employment Agreement," ECF No. 1-2 at 5. Neither party contests any facts about the who, what, when, where, or how of contract formation. Thus, the undersigned may consider the employment contract as an undisputed exhibit. *Contrast Isanto v. Royal Caribbean Cruises, Ltd.*, 497 F. Supp. 3d 1237, 1247 (S.D. Fla. 2020) (considering employment agreement that was referred to in complaint as undisputed exhibit) *with Rojas v. Custom Prot. Sec., Inc.*, No. 23-21699-CIV-RUIZ, 2023 WL 5154644, at *2 (S.D. Fla. July 31, 2023) (finding that plaintiff's affidavit challenging legitimacy of signature on agreement created a genuine dispute of fact).

However, Plaintiff denies "that [Defendant] has proven what, if any, other documents might have been incorporated therein, let alone any document styled 'Collective Bargaining Agreement.'" ECF No. 15 at 2. To resolve this narrow dispute, the undersigned looks to the face of the employment contract. The contract states "[t]he current ITF Collective Agreement (CBA) shall be incorporated into and form part of the

contract." ECF No. 3-1 at 2. It also states, "I have read, understood and agreed to all the terms and conditions of employment as identified in the Cruise Collective Bargaining Contract Agreement." *Id.* Based on this language, the undersigned finds that the CBA is incorporated by reference into the employment contract. *See Sierra v. Cruise Ships Catering & Servs. Int'l, N.V.*, 631 F. App'x 714, 716–17 (11th Cir. 2015) (upholding finding that collective bargaining agreement was incorporated into employment contract based on contractual language that employee "read and understood the conditions of . . . the associated Collective Agreement" (internal quotation marks omitted)). Taken together, the employment contract and incorporated CBA may be considered for the purposes of deciding the Motion, even if they fall "outside the four corners of the Complaint." *Babcock*, 454 F. Supp. 3d at 1228.

**b. The Aponte Affidavit**

When this Court directed the parties to submit supplemental briefs on the authenticity issue, Defendant submitted a verified affidavit from Mario Aponte, who is the managing director of MSC Malta. ECF No. 14-1. Aponte avers familiarity with the document asserted to be the CBA governing Plaintiff's employment, having personally signed that document. *Id.* at 2. Aponte also avers that Plaintiff executed the exhibits submitted by Defendant, which are presented in their entirety. *Id.* at 3. Thus, Defendant argues that the Aponte affidavit may be accepted for the purpose of authenticating the CBAs as "competent and unrebutted evidence of an agreement to arbitrate." ECF No. 13 at 6 (quoting *Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343, 1348 (11th Cir. 2025)).

Documentary evidence may be authenticated through an affidavit. *See Bury*, 692 F.2d at 1338 (finding that letters were authenticated by certified affidavit). But Plaintiff objects to the admission of the Aponte affidavit as "grossly untimely" because it was not filed contemporaneously with the Motion. ECF No. 15 at 5.

"While an affidavit supporting a . . . motion normally must be served with that motion, *see* Fed. R. Civ. P. 6(c)(2), nothing in the extant authorities, or in the Federal Rules of Civil Procedure, forbids a movant from making supplemental record submissions in a reply brief to rebut specific arguments raised by the non-movant's opposition brief." *Stewart-Patterson v. Celebrity Cruises, Inc.*, No. 12-20902-CIV-COHN, 2012 WL 5997057, at *1 (S.D. Fla. Nov. 30, 2012) (cleaned up). Indeed, "when an affidavit responds to an argument raised by the non-movant . . . , the Court may consider the affidavit." *Moody v. InTown Suites*, No. 1:04-CV-1198-TWT-AJB, 2005 WL 8154521, at *2 (N.D. Ga. Dec. 5, 2005). Where, as here, a litigant raises an issue for the first time in a response brief, the Court may accept exhibits in support of subsequent briefing. *See Morehardt v. Spirit Airlines, Inc.*, 174 F. Supp. 2d 1272, 1274 & n.2–3 (M.D. Fla. 2001) (considering affidavits that were appended to litigants' supplemental briefing). More importantly, any prejudice caused by the late filing of the Aponte affidavit is remedied by the fact that Plaintiff had an opportunity to respond to (or rebut) the affidavit through the permitted sur-reply. And Plaintiff has not produced any evidence weighing against the admission of the CBA. Accordingly, the undersigned may consider the affidavit.

Whatever shadow of doubt there is as to the authenticity of the CBA, "[t]he Court finds that the Agreement[] [is] adequately (albeit belatedly) authenticated" by the Aponte

affidavit.[5] *Aquino v. BT's On the River, LLC*, No. 20-20090-CIV-SCOLA, 2020 WL 4194477, at *3 (S.D. Fla. July 21, 2020) (accepting late-filed declaration from owner of defendant company for the purpose of authenticating arbitration agreement); *accord Edwards v. Whirlpool Corp., Aviation Dep't*, 678 F. Supp. 1284, 1287 (W.D. Mich. 1987) (accepting late affidavit for the purpose of authenticating seven documentary exhibits).

**2. Jurisdictional Requirements Under the Convention**

As stated above, Defendant bears the burden of proving the four jurisdictional prerequisites to compel arbitration under the Convention. Here, Plaintiff only disputes the first prerequisite,[6] which is whether "there is an agreement in writing within the meaning of the Convention." *Bautista*, 396 F.3d at 1294 n.7. The essence of Plaintiff's position is that Defendant is not a signatory to either the employment contract or the CBA, so Defendant cannot invoke the arbitration provision therein. It is undisputed that MSC Malta and Plaintiff are signatories to the employment contract. Defendant counters that even if it is a non-signatory, it may compel arbitration because it is expressly covered by the arbitration clause, principles of equitable estoppel allow Defendant to enforce the agreement against Plaintiff, and it is a third-party beneficiary to the agreement.

As explained *supra,* the CBA is incorporated by reference into the employment contract. "[A]n agreement in writing to arbitrate exists even where the arbitration

---

[5] Given the acceptance of the Aponte affidavit, the Court need not address the parties' arguments about the applicability of the authentication discussion in *Presida v. MSC Cruises*, No. 25-61571-CIV-SINGHAL, 2026 WL 562467, at *3 (S.D. Fla. Jan. 26, 2026).

[6] The parties agree that the place of arbitration—London, England—is in a territory of a signatory of the Convention; the relationship between Plaintiff and Defendant is a commercial legal relationship; and neither party is an American citizen. Thus, the second, third, and fourth prerequisites are satisfied. *See Gonzalez,* 757 F. Supp. 3d at 1319.

language is not stated in the main contract itself but, rather, is contained in a separate contract that is incorporated by reference into the main contract." *Polychronakis v. Celebrity Cruises, Inc.*, No. 08-21806-CIV-KING, 2008 WL 5191104, at *4 (S.D. Fla. Dec. 10, 2008) (citations omitted); *see, e.g., Bendlis v. NCL (Bahamas), Ltd.*, 112 F. Supp. 3d 1339, 1344 (S.D. Fla. 2015) (finding that employment agreement and incorporated collective bargaining agreement, taken together, satisfy the first jurisdictional prerequisite of the Convention). Here, the arbitration language in the CBA applies to

> any and all claims from a Seafarer against the Company, Company's parent, subsidiary and sister entities, Company's vessels or the operators of such vessels, Seafarer's Employer, and/or any officers, staff or crew of any of the Company's vessels, including, but not limited to, Jones Act claims, claims for damages for personal injury, wrongful death, negligence, unseaworthiness, failure to provide prompt proper and adequate medical care, or maintenance and cure, whether based in tort or contract or under the laws of any nation or jurisdiction.

ECF No. 3-1 at 20. The CBA defines "Company" as MSC Cruise Management (UK) Limited ("MSC UK"). *Id.* at 5.

Defendant contends it is a covered entity. Specifically, Defendant argues that it is one of the "operators" of MSC UK's ships. ECF No. 3 at 6. Plaintiff's own Complaint alleges that Defendant "was the owner pro hac vice and/or operator of the [MSC Fantasia] at the time of Plaintiff's employment on said vessel." ECF No. 1-2 at 4. Based on Plaintiff's own admissions, Defendant is covered as one of the "operators" of the vessels within the meaning of the arbitration clause. The "plain terms" of the arbitration provision thus support coverage of Plaintiff's claims against Defendant. *Cakarevic v. Royal Caribbean Cruises, LTD*, No. 23-21536-CIV-SCOLA, 2023 WL 3995597, at *3 (S.D. Fla. June 14, 2023) (interpreting language of similar arbitration provision as covering claims against non-signatory shipowner). The claims in this suit are, therefore, subject to

arbitration. *See Presida*, 824 F. Supp. 3d at 1283 (concluding that defendant cruise ship company is expressly included in arbitration clause as "operator of the vessel"); *see also Hooker White v. MSC Cruises, S.A.*, No. 26-61133-CIV-DAMIAN, 2026 WL 2029977, at *5 (S.D. Fla. July 14, 2026) ("As the operator of the vessel on which Hooker White was working, MSC is expressly included in the Arbitration Agreement.").

Upon entering an employment contract, Plaintiff agreed to arbitrate claims arising out of his employment, including the exact type of claims contemplated by the Complaint. Moreover, it appears that Plaintiff already began arbitration proceedings against MSC UK and MSC Malta in London, England. ECF No. 3-2. Plaintiff cannot now dodge the consequences of that agreement to arbitrate. Given the above, Defendant has shown that there is an agreement in writing within the meaning of the Convention. The four jurisdictional prerequisites are satisfied.[7]

**3. Affirmative Defenses**

This Court should therefore compel arbitration "unless it finds that the said agreement is null and void, inoperative or incapable of being performed." Convention, art. II(3); *see Bautista*, 396 F.3d at 1301–03 (interpreting "null and void" and "incapable of being performed" clauses of the Convention).

Plaintiff argues that the agreement is "null and void" because it conflicts with certain federal statutes, including a statutory right to a jury trial. ECF No. 6 at 18–20 (citing 46 U.S.C. § 30104(a); 9 U.S.C. § 1; 46 U.S.C. § 30527). But the cited authorities

---

[7] Defendant argues, in the alternative, that it may enforce the arbitration agreement either under an equitable estoppel theory or as a third-party beneficiary. ECF No. 3 at 6–12. Given the undersigned's conclusion under the express coverage theory, the undersigned need not address those alternative arguments.

"ha[ve] not created an exception to arbitrability" for the claims in this suit. *Chemaly v. Lampert*, 174 F.4th 843, 855 (11th Cir. 2026); *see Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 126 (2d Cir. 2010) (rejecting argument that agreement was substantively unconscionable because it took away plaintiff's right to jury trial). In fact, the Eleventh Circuit has already determined that one of the statutes cited by Plaintiff, 9 U.S.C. § 1, "does not apply to arbitration agreements that fall under the [Convention]." *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1284 (11th Cir. 2015). Moreover, "general contract principles govern the enforceability of arbitration agreements . . . , even where the covered claims include federal statutory claims generally involving a jury trial right." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1372 (11th Cir. 2005). Consequently, none of the statutory rights described by Plaintiff serve as an adequate basis for finding that the agreement is "null and void."

Plaintiff also argues the agreement is unenforceable because the arbitration clause lacks consideration. ECF No. 6 at 20–21. This argument has already been rejected in this Court. *See Presida*, 2026 WL 562467, at *4 (finding lack of consideration was not a valid ground to invalidate agreement); *see also Hooker White*, 2026 WL 2029977, at *5 (rejecting plaintiff's challenges to the enforceability of similar arbitration agreement). Nothing in the record supports a finding that the agreement is "null and void, inoperative or incapable of being performed." Convention, art. II(3); *see also Lindo*, 652 F.3d at 1276 (rejecting unconscionable argument based on crewmember signing employment agreement on "take-it-or-leave-the-ship" basis).

Accordingly, the Motion should be granted in part, such that the parties are directed to arbitrate their dispute in accordance with the terms of the arbitration provision in the

employment contract and incorporated CBA. As to Defendant's request that this Court dismiss the suit, the Supreme Court of the United States held "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Neither party requested a stay in this action. But "the Eleventh Circuit has expressed a preference for cases to be stayed rather than dismissed when a claim is subject to arbitration under the FAA." *Jackson v. Glob. Lending Servs., LLC*, No. 25-62117-CIV-DAMIAN/STRAUSS, 2026 WL 950605, at *5 (S.D. Fla. Feb. 17, 2026) (citing *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992)), *report and recommendation adopted*, No. 25-62117-CIV-DAMIAN/STRAUSS, 2026 WL 937965 (S.D. Fla. Apr. 7, 2026). Given that preference, the undersigned recommends that this case be stayed and administratively closed pending arbitration.[8] *See Broidy v. Am. Express Co.*, No. 25-80930-CIV-DIMITROULEAS/MATTHEWMAN, 2025 WL 3260157, at *6 n.3 (S.D. Fla. Oct. 30, 2025) ("While the Eleventh Circuit has on occasion affirmed district court orders compelling arbitration and dismissing the underlying cases, the Eleventh Circuit has previously indicated that a stay, rather than dismissal, is preferred where a stay is requested." (cleaned up)), *report and recommendation adopted*, No. 25-80930-CIV-DIMITROULEAS/MATTHEWMAN, 2025 WL 3260154 (S.D. Fla. Nov. 14, 2025).

[8] Other grounds for granting the Motion under Federal Rule of Civil Procedure 12(b) are moot and need not be addressed.

**RECOMMENDATION**

Based on the foregoing, the undersigned RECOMMENDS that the Motion to Dismiss and Compel Arbitration, ECF No. 3, be GRANTED IN PART and DENIED IN PART. The undersigned RECOMMENDS that the Motion be GRANTED to the extent that the parties are ordered to submit the claims presented in this suit to arbitration, the case is STAYED until such arbitration has been held in accordance with the terms of the agreements, and the case is CLOSED for administrative purposes. The Motion should be DENIED to the extent that it seeks dismissal of the case.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2018); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 4th day of August 2026.

PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Honorable William P. Dimitrouleas
All Counsel of Record